VILLAGE OF ST. LOUIS PARK v. THOMAS J. CASEY.[1]

November 3, 1944.

No. 33,863.

*Joseph L. Bard* and *John Ott,* for appellant.
*Edmund T. Montgomery,* for respondent.

LORING, CHIEF JUSTICE.

This is a suit under L. 1929, c. 176, § 2, Minn. St. 1941, § 462.02 (Mason St. 1940 Supp. § 1933-43), to enjoin defendant from maintaining in a residential district certain poles and wires for radio purposes in alleged contravention of a village zoning ordinance. The trial court granted the injunction, and the case comes here on appeal from an order denying a new trial.

[1]Reported in 16 N. W. (2d) 459.

Defendant is a radio enthusiast. He conducts radio schools in various large cities in the United States and operates radio equipment under a federal amateur license at his residence on lot three in block 12 of Minikahda Vista in the plaintiff village. There being no alleys in that part of the village, lot three abuts end to end on lot 22 of the same block, which is also owned by defendant. He has fenced and improved and is now using lot 22 in connection with lot three as the back yard of his residence. He has placed a barbecue pit, permanent settees, trees, and shrubbery thereon. This gives him a residential tract the width of the lots extending through the block from street to street.

On lot three defendant has installed, in the basement of the house in which he lives, an expensive amateur receiving and sending set. Since the outbreak of war with Japan the set has not been permitted to be used for transmission. For purposes of radio reception and transmission, defendant erected a 30-foot pole in the rear of lot three in order to put up an antenna suitable for a short-wave set. This was found to be unsatisfactory for certain distances, and so he erected farther to the rear of his house and on lot 22 two similar poles with wires. The one nearest his house was equipped with revolving directional antennae. Again, the reception or transmission was found unsatisfactory for certain ranges, so, in September 1941, defendant extended the height of the pole farthest from his house 25 to 30 feet. This pole was not equipped with directional antennae but was connected to the radio set by a wire running to and through the garage. Now, defendant may, by use of his various antennae, get world-wide coverage in both reception and transmission.

In further explanation, it may be said that part of the antenna equipment so erected is effective within certain limited distances. Other parts of the equipment are effective at greater distances. In order to transmit and receive within distances greater than 15 or 20 miles from the station and less than 500 to 1,000 miles, the taller pole was required. This taller pole is constructed of wood

and resembles a tall, slender flagpole. It is guyed against wind up to 400 miles an hour.

It is the removal of the two poles on lot 22, with their guy wires and anchor posts, that is the object of the plaintiff's suit. The claim for injunction is based solely on violation of the zoning ordinance, and no relief is sought under the nuisance allegations of the complaint.

Defendant's residence is situated within the residential district, defined by section 4 of the zoning ordinance, where "no building or premises shall be used and no building shall hereafter be erected or structurally altered except for one or more of the following uses:

"1. Private Dwellings, Country Estates.

\* \* \* \* \*

"12. Uses customarily incident to any of the above uses when located on the same lot and not involving the conduct of a business; \* \* \*."

The question presented by defendant is whether the ordinance properly construed is effective to prohibit the maintenance of the poles and wires which plaintiff seeks to have removed. Without question, the poles and wires in controversy are "structures" within the definition of that term in section 1, subd. 45, of the ordinance, which reads:

"45. *Structure.* Any temporary or permanent use, storage, form or arrangement of building or construction materials involving the necessity or precaution of providing proper support, bracing, tying, reinforcing, anchoring or other protection against heat, cold, loading, or the pressure of the elements, such as air, other gases, water, other liquids, earth, or other solids, in order to protect life from injury, or property from damage, as provided in this ordinance or any other ordinance, law, rule, or regulation governing same, or as followed in general construction practice, is a structure, and as such is classed as a building for the purpose of this ordinance." (Italics supplied.)

■ The use of radios in private residences is as common as the use of refrigerators. The court takes judicial notice of the custom of householders to use outside antennae or aerials for radio reception. This custom may be waning on account of the improvement of inside aerials, especially for local reception, but it is still recognized as good practice, especially for long-range, short-wave reception, for which most good sets are equipped. While many aerials are attached to poles above the roofs of dwellings, and even to trees, the use of separate poles or masts for this purpose still prevails when a householder seeks the best reception. Such equipment is certainly customarily incident to a residential establishment.

The use of short-wave amateur sets for both reception and transmission is so common in the United States that the Federal Communications Commission licenses such sets for transmission within certain wave lengths, and there is an American Radio Relay League of the proprietors of amateur stations. That many, if not most, of these amateur stations are operated in connection with residences is too well known a fact to be ignored. The evidence in the case at bar tends to show that there are at least six amateur stations in plaintiff village, some with higher poles than defendant's.

There is no evidence in the record that the use of defendant's set for transmission requires a change in the type of structure for long-range reception, but, even if it does, it would not change the legal aspects of our problem. Neither the height of such poles nor their appurtenances are regulated by ordinance so long as they present no hazard to person or property. Whether the pole was short or long, its use was for the same purpose. If long, it was more effective in certain ranges.

No aesthetic considerations are here involved. No relief is sought on the theory of nuisance or interference. There is no competent evidence of such. On the determination of this branch of the question before us, the sole issue is one of customary use. That defendant's indoor equipment cost him nearly $10,000 and that he uses it for the purposes hereinbefore stated does not present a

difference in the kind of use to which he devotes his exterior equipment from that of the ordinary radio set. It is merely a difference in degree. It is still radio communication. If the proprietor of a radio set is willing to make the necessary investment in a set capable of communicating with other parts of the world, he is still, if licensed so to do, within the legitimate field of amateur radio and within the normal, and, so far as amateurs are concerned, within the customary, use of residential establishments by such amateurs. It is significant that plaintiff seeks no relief against the pole on lot three, which is devoted to identically the same type of use as those on lot 22. If that pole is not devoted to a use customarily incident to a residential tract, it is a structure erected in violation of the ordinance, even though it be on the same lot as the house.

■ We now come to the problem of whether defendant's use of his amateur set is a "business" within the terms of said subd. 12 of section 4 of the ordinance. There is no evidence whatever that defendant in any way uses the equipment for commercial or business purposes. This record indicates that he uses it solely for personal enjoyment. It is an expensive hobby, but no business. Since 1941 he has not been permitted to use it for transmission.

■ The foregoing leaves the plaintiff's case standing on the bald theory that defendant's customary enjoyment of his residential establishment is restricted to the single platted lot on which his residence happens to stand.

If all the poles had been erected upon lot three or if the plat of lot three included the area which is now platted as lot 22, this branch of plaintiff's theory of the case would wholly fail. It relies upon the wording of subd. 12, above quoted, which limits the structures therein described to those "located on the same lot."

It conclusively appears from the evidence that the two lots comprise but a single residential establishment, lot 22 having been improved for the general purposes of a back yard or formal garden and lawn, as well as for the erection of the poles and wires in controversy. The establishment comprises but one tract or parcel appropriate for a residence or residential estate. As applied to a

residential property, which consists of two lots abutting in the manner that lots three and 22 abut and which, in fact, comprise but one tract or parcel appropriate for a residence or estate, the restriction to a single platted lot of customary use incidental to a residential establishment is arbitrary and unreasonable and consequently void.

If subd. 12 is to be sustained, it must be interpreted not according to the platted lot or lots but as applied to a single residential establishment, with the area appropriate thereto. So interpreted, the section can be sustained, but not otherwise. Therefore, on this record, we must reverse the order appealed from and remand the case with directions to enter judgment for defendant.

So ordered.

Youngdahl, Justice (dissenting).

I cannot agree that the erection of the radio poles and wires as shown herein is a use customarily incident to a residential district. The apparatus consists of one pole 30 feet in height, located at about the center of lot 22, on which are rotary antennae, and a 60-foot pole set in a concrete foundation 10 or 12 feet deep at the front building line of the lot. This pole is supported by three guy wires extending in three directions from the pole and anchored to eight-inch iron posts eight feet high, two of which are situated at the front corners of the lot and the third toward the rear of the lot. Defendant described the tallest pole as follows:

"Constructed of lumber two inches by eight inches, bolted together with angle irons supporting each piece, connecting the bolts to each other piece. It is mounted in cement ten feet, twelve feet down in the ground, sunk in cement, with a cement base weighing probably a thousand pounds; and it is properly guyed with wires, and figured on a very mathematical formula to stand a wind pressure of 400 miles an hour."

Both of these poles are used to support antennae for receiving and transmitting radio messages in connection with apparatus maintained by defendant in his home situated on an adjacent lot.

Wires from the radio antennae extend across electric power and telephone wires at the rear of the two lots. The radio apparatus maintained by defendant in his home cost $10,000, and consists of a transmitter maintained on three relay racks, each 5½ feet high and 18 inches wide, and a receiving apparatus comprising three receivers on a long table about six feet long. This station is capable of sending and receiving messages over the entire world. Defendant was operating radio schools in Minneapolis, Detroit, and Cleveland. He trained radio operators by correspondence as a part of the courses offered by the school. The record is silent as to whether the students in the school received part of their training at defendant's' residence, and whether the equipment located there was used in connection with his business. Therefore, it cannot be found from the testimony that defendant violated the zoning ordinance by operating a business. It seems clear to me, however, from a glance at the accompanying photograph, that the apparatus was not ordinarily incident to a residential use.

In the majority opinion judicial notice is taken "of the custom of householders to use outside antennae or aerials for radio reception." The type of equipment here involved, it seems to me, is a far cry from the type ordinarily used in residences. The statement in the majority opinion that, "While many aerials are attached to poles above the roofs of dwellings, and even to trees, the use of separate poles or masts for this purpose still prevails when a householder seeks the best reception. Such equipment is certainly customarily incident to a residential establishment," is, in my opinion, not justified by the record. I do not believe the testimony bears out the conclusion that the radio apparatus used by defendant was such as was ordinarily incident to a residential purpose. William H. Martin, president of the village council, testified that he knew of no similar apparatus in the entire village of St. Louis Park except at a residence located in an industrial center, where there was situated a large lumberyard. Defendant testified that there were about 12 amateur radio broadcasting stations in St. Louis

Park, but the evidence is barren of any description of apparatus used in connection therewith, with the exception of two places. One, referred to in the testimony of Mr. Martin, is located adjacent to the lumberyard, and another residence is described by defendant as having a telegraph pole about 55 to 60 feet in height equipped with rotary beam antennae. In other words, defendant could point to but two other residences in the entire village having similar equipment, and one of them is located in an industrial area. Can it be said, then, as a matter of law upon this testimony that the apparatus is ordinarily incident to residential purposes? The 1940

census of St. Louis Park shows a population of 7,737.[2]  It seems to me that such a use so insignificant in proportion to the population indicates that the equipment was *not* such as is customarily incident to residential purposes.

We must not lose sight of the fact, moreover, that we are considering this case as a court of review.  The lower court found that the provision of the zoning ordinance in question was violated.  Implicit in the finding is the fact that the equipment was not such as is ordinarily incident to residential use.  In reviewing the case, it should not be determined upon the basis of how we think it ought to be decided, but rather whether reasonable men might differ as to whether the equipment was ordinarily incident to residential purposes.

A broad discretion rests with the legislative body in the adoption of zoning ordinances.  If the reasonableness of the ordinance is debatable, courts will not interfere with legislative discretion.  State v. Modern Box Makers, Inc. 217 Minn. 41, 13 N. W. (2d) 731; Smith, Zoning Law and Practice, § 58.  These zoning ordinances have as one of their salutary purposes the restriction of residential districts to uses reasonably consistent with such a locality.  It is my conviction that by holding the use of this type of radio equipment not violative of the ordinance upon the record before us, we are usurping the function of the trier of fact and thwarting the enforcement of a reasonable and salutary provision of the zoning ordinance of St. Louis Park.

I think the order should be affirmed.

MAGNEY, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Youngdahl.

---

[2]Sixteenth Census of United States, 1940, Vol. II, Part 4, p. 107.