HUBBARD BROADCASTING, INC.,
et al., Appellants,

v.

CITY OF AFTON, et al., Respondents.

No. 81–506.

Supreme Court of Minnesota.

Aug. 27, 1982.

Rehearing Denied Oct. 5, 1982.

Peterson, Popovich, Knutson & Flynn, Peter S. Popovich and Thomas M. Sipkins, St. Paul, for appellants.

Larkin, Hoffman, Daly & Lindgren, Christopher J. Dietzen and Forrest D. Nowlin, Minneapolis, for respondents.

WAHL, Justice.

Appellants brought this declaratory judgment action against the City of Afton (Afton) to review Afton's denial of a special-use permit and to secure the issuance of such a permit for the construction of a satellite station or, in the alternative, a determination that there had been a taking of property without just compensation. The district court concluded that Afton had properly denied appellants' application for legally sufficient reasons supported by facts in the record and that there had been no compensable taking. We affirm.

In 1976, Hubbard Broadcasting, Inc. (Hubbard) sought to acquire property for the construction of a satellite communication and receiving tower, equipment building and antennae (satellite station) in an area free from electronic interference. The satellite station would permit Hubbard to receive and transmit non-network television programming via satellite. Hubbard's agents analyzed the metropolitan and surrounding area and determined that the optimum site for the satellite station would be a Bissell's Mound[1] located in Afton on the property of Herman and Dorothy Froehner. The Bissell's Mound would shield the satellite receiver, located at the base of the Mound, from microwave interference and also provide sufficient height for the 125-foot tower to be constructed on top of the Mound to allow Hubbard to transmit in a line-of-sight between its satellite station and its studios located in St. Paul.

The satellite station would consist of a 125-foot tower with a 2-foot-square base located on top of the Mound, a satellite communication dish 20 feet in diameter and 36 feet high located at the base of the Mound, and an equipment building located next to the satellite dish. The areas around the base of the Mound and the tower on top of the Mound would be protected by an 8-foot-high fence topped with barbed wire.

On January 5, 1978, Hubbard entered into an option agreement with Herman and Dorothy Froehner for the purchase of 10 acres, the Bissell's Mound and adjacent land, conditioned upon the granting by Afton of a special-use permit to construct the satellite station. When the Afton Planning and Zoning Commission (Commission) voted to recommend denial of a variance at its November 14, 1978, meeting, Hubbard obtained an option on an additional 7 acres, thereby complying with Afton's 300-foot-frontage requirement and avoiding the need for a variance.

---

1. The Bissell's Mound is a hill that remains at the end of a long history of erosion. There are several in Afton, and each consists of St. Peter sandstone with an overlying Platteville cap rock extending approximately 60 feet above the surface of the surrounding land. The Mounds are unique in Afton because there are no other hills with similar features. They are geologically rare in Washington County and the State of Minnesota.

Hubbard then applied for a special-use permit to construct its satellite station, which would occupy 1½ acres. Hubbard proposed that the remainder of the 17 acres would be left for open space and park; and, for those portions surrounding the Mound which are capable of being farmed, the Froehners would have a lease back from Hubbard to continue farming. At its September 11, 1979, meeting, the Commission heard testimony, received exhibits from representatives of Hubbard and the public, and voted to recommend that the Afton City Council (Council) deny Hubbard's request for the special-use permit.

The Council reviewed the transcript of the Commission's September 11, 1979, meeting and, on October 3 and 17, 1979, held two hearings on Hubbard's application. Between the Council's hearings, two members of the Council had a private discussion regarding Hubbard's application. At its October 17, 1979, meeting, the Council voted to deny the application on the following grounds stated orally by Council member Mucciacciaro:

[I]t does not conform to the overall intent of the comprehensive plan; does not fit with the nature of the uses in the particular area; placement of the antenna does not fit conservancy district requirements; impacts on the general welfare of the community by reason of the impact on the property values of the area; it has an adverse environmental impact; that our Planning Commission members were not satisfied that it was not technically possible to place a facility in a more suitable area; that the geologists' report that the Bissell Mounds are geological [sic] rare, I think that's another reason; and also I believe that is a commercial use in a zoned agricultural area which is not permitted in our ordinance.

In January 1980, Hubbard commenced this action in district court and also delivered plans and an application to the Afton Plans Inspector for the purpose of obtaining a building permit to construct a satellite station that included a 45-foot tower. By a letter dated February 6, 1980, the Afton Zoning Administrator advised Hubbard on behalf of the Zoning Administration Committee that the proposed satellite station was in an agriculture-conservancy zone and could be constructed only following the issuance of a special-use permit, and that the following would also be required: conditional-use permit, driveway permit, grading permit and building permit.

The Zoning Administrator also informed Hubbard that an appeal from the Zoning Administration Committee's decision could be taken to the Commission or the Council. No appeal was taken, but appellants amended their complaint in district court to allege that the denial of the building permit application was arbitrary, capricious and unreasonable.

At a pretrial conference conducted on June 3, 1980, the issue of scope of review was discussed. Hubbard and the Froehners sought a trial de novo, and Afton sought a review on the record. The district court, in an order dated June 4, 1980, stated alternative procedures to be used, depending on which scope of review it followed. The order stated that, because Hubbard indicated that there were additional matters or records that should be added to the record, the parties could stipulate to additional evidence that would make the record complete and that an aggrieved party could make a motion to supplement the record. No motions were made regarding the taking of further evidence.

On August 14, 1980, the district court issued an order limiting the scope of review to the record, quashing Hubbard's subpoenas to depose members of the Commission and Council and directing briefs to be filed on the facts with specific references to the record concerning the sufficiency of the evidence for the denial of the application.

On January 28, 1981, the district court issued findings of fact, conclusions of law and order for judgment concluding that Afton's action in denying appellants' application was not arbitrary, capricious or unreasonable and was not unlawful; that appellants were not entitled to the permits requested; that there was no unconstitutional

taking of appellants' property; that respondents did not violate the open-meeting law; and that Afton was not entitled to judgment for additional expenses incurred in processing plaintiffs' application. Plaintiffs appealed from the order denying their motion for a new trial.

This appeal raises the following issues:

1. Whether appellants are entitled, under the facts of this case, to a trial de novo or to a supplementary evidentiary hearing in district court.

2. Whether there are legally sufficient reasons with a factual basis in the record to support the City of Afton's denial of Hubbard's special-use permit application; and, if so, whether the denial was invalid because of an alleged open-meeting law violation.

3. Whether the City of Afton's action regarding Hubbard's building permit application for a satellite station with a 45-foot antenna was lawful.

4. Whether the City of Afton's denial of the permits sought by Hubbard constituted a taking of the Froehner's property without just compensation.

■ 1. Appellants contended in the court below and initially on appeal to this court that they were entitled to a trial de novo or an evidentiary hearing on all issues before the district court. After we requested supplementary briefs on the nature and scope of review in light of our decision in *Honn v. City of Coon Rapids*, 313 N.W.2d 409 (Minn.1981), appellants basically reversed themselves and considered such a hearing as to the permit denial to be of "marginal" value. We agree. The very clear and complete record developed before the Commission and Council,[2] as well as the district court's June 4, 1980, order allowing plaintiffs to augment the record by stipulation or by motion, "permitted the parties to

present their respective positions fully" to the district court.[3] *Id.* at 418. The district court properly conducted the review of the permit denials on the record.

Whether an evidentiary hearing was properly denied on the constitutional issue, however, is less clear. Citing *McShane v. City of Faribault*, 292 N.W.2d 253 (Minn. 1980), the district court noted that the right to use property as one wishes is subject to, and limited by, the proper exercise of the police power in the regulation of land use and that such regulation does not constitute a compensable taking unless it deprives the property of all reasonable use.

Ordinarily an evidentiary hearing is for the purpose of determining whether the denial of a special-use permit has deprived the owner of the property in question of all reasonable use. *McShane*, 292 N.W.2d at 257; *see Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Appellants, in their complaint, sought issuance of a special-use permit or, in the alternative, damages suffered because of the unconstitutional taking of property without compensation. Appellants, in their June 2, 1980, motion for summary judgment that the permit sought be issued, raised the issue of the district court's scope of review. They argued that discovery should be permitted and that the trial court should admit additional evidence on the issue of the permit. At that time, their memorandum to the court reveals, they expected that if no further evidence could be admitted on that issue, they would be afforded the opportunity to present evidence on the constitutional issue. Respondent, also, in its memorandum in support of its motion for partial summary judgment, urged that the court decide the validity of the denial of the permits on the record and "[t]hereafter, * * * try the Plaintiffs' alle-

---

**2.** *Cf. Town of Grant v. Washington County*, 319 N.W.2d 713 (Minn.1982).

**3.** Where "city councils and zoning boards do not * * * make records of their proceedings as complete and as formal as those of a state administrative agency or commission," the

proper procedure for review before the district court provides that "[n]ew or additional evidence *may* be received at the trial." *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 415–16 (Minn.1981) (emphasis added).

gation that the Defendant's actions were unconstitutional."

■ While the district court did not bifurcate the proceedings pursuant to Minn. R.Civ.P. 42.02, such bifurcation would be unnecessary if a review of the permit issue was on the record with a trial only on the constitutional issue. The district court stated in its June 4, 1980, order that it would decide the question of scope of review and, until such decision was made, permit the augmentation of the record by stipulation or motion. Logically, appellants would not waive their right to add to the record on the constitutional issue prior to the district court's decision regarding scope of review because, if a trial were to be conducted, no stipulation or motion would be necessary.

On August 14, 1980, the district court ordered that review of the permit denial would be on the record and that the parties were to "file briefs on the facts with specific reference to the record concerning the sufficiency of the evidence denying the application." Appellants' efforts to conduct further discovery were also terminated. No mention was made of the constitutional issue in this order or in the subsequent briefs of the parties. The parties made no effort on the record to clarify the court's order or procedure.

In January 1981, however, when the court invited both parties to submit proposed findings of fact and conclusions of law, both parties did so, and both parties submitted proposed findings and conclusions on the taking issue. We conclude that at this point both parties acquiesced in the court's determining both issues on the record.

2. We consider next whether there is a legally and factually sufficient basis in the record to support the City of Afton's denial of Hubbard's special-use permit application.

The actions of the Council were taken pursuant to a comprehensive municipal plan (plan) adopted in 1975 and a zoning ordinance (ordinance) enacted the same year to implement the development standards of the plan. The plan states goals, policies and standards to guide land use and directly expresses the intention to preserve and enhance the low-density residential-agricultural character of the community and its scenic beauty. Community Policy 5 in the plan provides:

To the extent feasible and practicable, the following physical features of the City shall be preserved in a natural state and be properly maintained as such:
a) Swamps and other low, wet areas.
b) Lakes, streams, and ponds in an unpolluted state.
c) Drainageways and other features of the surface water drainage pattern.
d) Tree cover.
e) Wildlife areas.
f) "Protection" areas.

Policy 16 provides that "[n]on-residential development will be encouraged to locate adjacent to Highway 12 and within the 'Old Village' as parts of an integrated commercial development. Strip and spot commercial development will be strongly opposed."

Appellants' lands are located within an area designated by the plan-map for agriculture-low-density residential development. In addition, the land use plan-map classifies the Bissell's Mound as being in a general "protection-open space" area.

The 17 acres involved are within the district zoned agricultural, and the area that includes the Bissell's Mound is designated as a "conservancy" district. The express purpose of the conservancy district is to "manage areas unsuitable for development due to wet soils, steep slopes, or large areas of exposed bedrock; and [to] manage areas of unique natural and biological characteristics in accordance with compatible uses." Afton, Minn., Zoning Ordinance § 613.01 (1975).

The permitted and special uses allowed in the conservancy district are the same as those in the agricultural district. The ordinance, in section 604, lists the following as special uses in an agricultural district: "Antennae or Towers over 45' in Height"; "Essential Services—Transmission services, buildings and enclosed storage"; and "Utility Substations." The following are not per-

mitted uses in agricultural districts by the ordinance: "Broadcasting Studios" and "Offices." "Office Uses" are defined to include "radio broadcasting, and similar uses." *Id.*, § 302.01 (116).

Section 506.01 of the ordinance specifies the standards which must be considered in granting a special-use permit:

The Afton City Council may grant a special use permit in any district, provided the proposed use is listed as a special use for the district in Section 6. In granting a special use permit, the City Council shall consider the effect of the proposed use upon the health, safety, morals, convenience, and general welfare of the occupants of surrounding lands, existing and anticipated traffic conditions including parking facilities on adjacent streets and land, the effect on utility and school capacities, the effect on property values and scenic views in the surrounding area, and the effect of the proposed use on the Comprehensive Plan. If it shall determine that the proposed use will not be detrimental to the health, safety, convenience, morals, or general welfare of the County, nor will cause serious traffic congestion nor hazards, nor will seriously depreciate surrounding property values, and that said use is in harmony with the general purpose and intent of this Ordinance and the Comprehensive Plan, the City Council may grant such special use permit.

The relationship between the ordinance and the plan is further clarified in section 421.03 of the ordinance, which provides: "In granting any rezoning, special use permit, variance, or other permit as provided for in this Ordinance, the Planning Advisory Commission shall find that the proposed development is in substantial compliance with the policy, goals, standards, and plans as contained in the Comprehensive Plan for the area."

■ Special-use permits may be denied for reasons relating to public health, safety and general welfare or because of incompatibility between the proposed use and a municipality's comprehensive municipal plan. *C. R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 324 (Minn. 1981). In our review we focus on the decision of Afton's City Council, *id.* at 325, noting that appellants bear the burden of persuasion that the reasons stated by the Council for denial of the permit are either without factual support in the record or are legally insufficient. *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712, 717 (Minn.1978).

The Council stated eight specific reasons for denying the special-use permit. We find the reasons discussed below to be legally sufficient and to have a factual basis in the record.

■ The Council denied the special-use permit in the first instance because it "does not conform to the overall intent of the Comprehensive Plan." In *Barton*, we stated that "[a] municipality may weigh whether the proposed use is consistent with its land-use plan in deciding whether to grant a special-use permit," and noted that the Afton Comprehensive Plan "is * * * permeated with evidence of a strong desire to preserve the rural character and unique scenic beauty of Afton and the St. Croix Valley." 286 N.W.2d at 717. On the facts of this case, the Council's determination that the satellite station located at the base and on top of the Bissell's Mound would be inconsistent with the plan had evidentiary support and was within the bounds of the Council's informed discretion in interpreting the plan. Afton's determination that the Hubbard proposal was inconsistent with its comprehensive plan was a legally sufficient reason for denial of a special-use permit.

The Council's next stated reasons were that the satellite station "does not fit with the nature of the uses in the particular area" and "is a commercial use in a zoned agricultural area which is not permitted in [Afton's] ordinance."

■ The satellite station is a commercial use which is not a permitted use in the agricultural district or allowed by issuance of a special-use permit. Hubbard contend-

ed that the use was "special" and could not be categorized as commercial because there would be no regular employees, traffic congestion, noise or litter. However, billboards have the same passive characteristics but have been deemed to be commercial for zoning purposes. *Naegele Outdoor Advertising Co. v. Village of Minnetonka,* 281 Minn. 492, 499, 162 N.W.2d 206, 212 (1968). And, in *Village of St. Louis Park v. Casey,* 218 Minn. 394, 397–98, 16 N.W.2d 459, 460–61 (1944), we looked to see to what use an antenna was put in determining whether the use was "business." Here, Hubbard is a profit-seeking business, and the satellite station is a part of a commercial enterprise and would be taxed as a commercial use. Afton's determination that the satellite station is a commercial use and one which does not fit the nature of an area zoned agricultural and, therefore, not a permitted use is a legally sufficient reason supported by the record.

■ Hubbard contends that, even if the satellite station is commercial, denying the permit results in inconsistent and unequal treatment under the ordinance because other commercial uses are allowed within the agricultural low-density district: airport, utilities, commercial animal-training, commercial feed lots, animal kennels, nursery and garden supply and recreation equipment sales. These uses are agricultural-related uses except for the airport and utilities, which have the power of condemnation, a power which overrides local zoning. Hubbard cites *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865 (Minn.1979) for the proposition that applicants must be uniformly treated. It is true that applicants must be treated uniformly, but *Northwestern College* deals with the application of an ordinance to two applicants wishing to make the same use of property and not to a determination as to whether a particular use—one which is not an agricultural use—is compatible with the nature of uses in an area zoned agricultural. Municipalities have a great deal of discretion in classifying districts, *Honn,* 313 N.W.2d at 417, and those uses permitted in the agricultural district are rationally relat-

ed to serving the purposes articulated by the comprehensive plan.

Another reason the Council gave for denying the special-use permit was that the satellite station "does not fit the conservancy district requirements." The purpose of the conservancy district is to "manage areas unsuitable for development * * * and * * * areas of unique natural and biological characteristics in accordance with compatible uses." Afton, Minn. Zoning Ordinance § 613.01. All uses permitted in the agricultural use district are permitted in the conservancy district as well. Failure of the satellite station to fit the nature of the uses in the agricultural district also means that such a use does not fit the conservancy district.

■ The Council also stated that the satellite station would "impact[ ] on the general welfare of the community by reason of the impact on the property values of the area." In *Barton,* testimony of an experienced real estate broker that gravel mining would have an adverse effect on the value of surrounding property provided a factual basis for part of the Council's legally sufficient determination with regard to the welfare of the surrounding landowners. 268 N.W.2d at 718. Here, there was conflicting testimony. Hubbard's real estate agent testified that there would be no adverse impact on property values. Two real estate agents who practice in the area presented evidence. One testified that there would be an adverse impact on property values, and the other submitted by letter his opinion that property values would be reduced by construction of the tower. Such testimony provides a factual basis to support Afton's legally sufficient determination with regard to the general welfare of the community.

■ The Council found that the satellite station would have an "adverse environmental impact" and "that geologists report that the Bissell Mounds are geologically rare." Testimony and evidence presented regarding these two reasons focused on potential health problems due to microwave

transmissions and the impact of the satellite station on the Bissell's Mound and resulting aesthetic impact on the community. There is insufficient evidence to establish that the satellite station would have an adverse environmental impact due to microwave transmissions, but there is ample evidence that the Bissell's Mound is a geologically rare formation and is of aesthetic value to the community. While such environmental characteristics may not in and of themselves provide a legally sufficient reason to deny a special-use permit, they are factors which may be considered, as the district court noted, in the context of the comprehensive plan and conservancy district purposes.

■ We hold that appellants have not met their burden of showing that the Council's action was taken without legally sufficient reasons with factual support in the record.[4]

Appellants contend that a violation of the open meeting law, Minn.Stat. § 471.705 (1980),[5] deprived them of their rights to be fully informed of discussions that were crucial to their permit applications and demonstrated the arbitrariness of Afton's denial of the special-use permit. By answer to interrogatories, Council member M. A. Cournoyer stated that he had discussed Hubbard's applications with a Commission member after the September 11, 1979, Commission meeting and with a Council member over lunch between the October 3, 1979, and October 17, 1979, Council meetings.

Appellants seek invalidation of the Council's action due to the discussion between two Council members over lunch of Hubbard's application. Minn.Stat. § 471.705, subd. 2 (1980) provides statutory penalties in the form of fines or removal from office for any violation of the open meeting law. In *Sullivan v. Credit River Township*, 299 Minn. 170, 217 N.W.2d 502 (1974), a case

instituted prior to the adoption of the above statutory penalties, we noted that the statute neither provided for enforcement nor "specif[ied] that action taken at a meeting which is not public [should] be invalid." *Id.* at 176, 217 N.W.2d at 507. In the present case, we are not concerned with a meeting where action was taken, only with one where discussion occurred, and note that "deliberation cannot be nullified." Note, *The Minnesota Open Meeting Law after Twenty Years—A Second Look*, 5 Wm. Mitchell L.Rev. 375, 417 (1979).

■ The attorney general has expressed the opinion that conversations between members of two separate government bodies do not constitute a meeting for purposes of the open meeting law. Op.Atty.Gen. 471-e (May 23, 1978). In *Minnesota Education Association v. Bennett*, 321 N.W.2d 395 (Minn., 1982), we stated that "it is the power to decide, as opposed to the right to recommend, that determines whether one is a member of a governing body." At 397. Therefore, the conversation between Cournoyer and the Commission member does not constitute an open meeting law violation.

The extensive procedural requirements established in connection with the review of municipal actions regarding special-use permits and the extremely clear and complete record in this case have ensured free and open discussion, deliberations and informed public decision-making. Like the zoning review situation in *Einarsen v. City of Wheat Ridge*, 43 Colo.App. 232, 604 P.2d 691 (1979), all evidence was presented and all actions were taken at public meetings. No open meeting law violation was found in *Einarsen*, and we conclude that none occurred here.

3. Hubbard next argues that Afton's refusal to issue a building permit for a satellite station was unlawful. After being de-

---

**4.** Not all of the reasons stated need be legally sufficient and supported by facts in the record. *See Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712 (Minn.1978).

**5.** Minn.Stat. § 471.705, subd. 1 (1980) provides in pertinent part:

Except as otherwise expressly provided by statute, all meetings, including executive sessions, of * * * the governing body of any * * * city * * * and of any committee, subcommittee, board, department or commission thereof, shall be open to the public.

nied a special-use permit, Hubbard modified its plans by reducing the height of the tower to 45 feet. Hubbard contends that such a tower is a permitted use and argues that Afton was arbitrary and capricious in denying the issuance of the building permit.

Afton's zoning administrator informed Hubbard that the proposed use was a "broadcasting studio; essential-transmission services, building and enclosed storage; manufacturing, limited; offices; storage, enclosed principal use; utility substation," and that the following permits would be required prior to issuance of a building permit: special-use, conditional-use, driveway and grading. While the ordinance does not have a classification of "satellite station," the nature of the use is similar to those listed above, which are either not permitted or require the issuance of a special-use permit.

As to the type of use proposed, we do not agree with Hubbard's contention that the height of its tower is determinative. Rather the Council properly looked to the nature of the entire complex, which includes the antenna, a satellite receiving dish and equipment building. We have upheld Afton's denial of a special-use permit for reasons articulated by the Council. We also find that the city acted reasonably in refusing to issue a building permit for an identical satellite station which differs only in that the tower is shorter. The use remains commercial and is not permitted in the area which is zoned agricultural.

4. Finally, we consider whether Afton's refusal to issue special-use permits constitutes a taking of the Froehner's property without just compensation. Regulation through zoning ordinances "does not constitute a compensable taking unless it deprives the property of all reasonable use." McShane, 292 N.W.2d at 257, citing Euclid, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. The district court concluded from the record that the property could be used for agricultural and residential uses and, therefore, that appellants had failed to show that they had been deprived of all reasonable use. We agree. The owners can continue to use most of the land for agricultural purposes as at present, and it is clear from the record that, under the subdivision ordinances of the City of Afton, the Mound itself could be used to fulfill the open-space requirement for subdivision development. The posture of this case is that only one functional use of the land has been denied. It is purely speculative to conclude that the appellants have been denied all reasonable use of the land that comprises the Mound. Only under rare circumstances can we conceive of a special-use permit denial resulting in an unconstitutional taking.

At oral argument appellants cited Kraft v. Malone, 313 N.W.2d 758 (N.Dak.1981), where the North Dakota court found that a constructive denial of a building permit resulted in a taking. Kraft is distinguishable because the property involved was an urban lot and, absent the right to construct a building, the court concluded that there would be no reasonable use of the land. Here, a denial of the permits necessary to build a satellite station does not foreclose other reasonable uses of this property. We hold that denial of the special-use permits did not constitute a taking of the property without just compensation and affirm the judgment of the district court.

Affirmed.

PETERSON, Justice (concurring in part; dissenting in part).

I concur in the opinion of the court in all respects except its affirmance of the denial of a building permit for the establishment of a tower 45 feet in height, for I believe this is clearly authorized by section 407.-16(6) of the zoning ordinance. That section places a height limitation of 45 feet on "transmission towers of commercial and private radio broadcasting stations, [and] television antennae." Section 604 requires the issuance of a special-use permit only if towers over 45 feet in height are to be constructed in an agricultural district. Read together, these two sections of the ordinance imply that towers less than 45 feet are permitted uses in an agricultural dis-

trict. To conclude otherwise results in an absurd situation where towers of 45 feet are specially permitted uses, but towers less than 45 feet are not permitted at all. (As the majority opinion notes, all uses permitted in the agricultural use district are permitted in the conservancy district as well.) I would accordingly order the issuance of a building permit for a tower of that height pursuant to Hubbard's amended application.

TODD, Justice (dissenting).
I join in the dissent of Justice Peterson.

YETKA, Justice (dissenting).
I join in the dissent of Justice Peterson.