Leslie THOMPSON, et al., Respondents,

v.

CITY OF RED WING, Defendant,

The State of Minnesota, et al., Appellants.

No. C4–89–1700.

Court of Appeals of Minnesota.

May 15, 1990.

Peder B. Hong, Red Wing, for respondents.

Hubert H. Humphrey, III, Atty. Gen., Mark B. Levinger, Sara H. Jones, Sp. Asst. Attys. Gen., St. Paul, for appellants.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE,[*] JJ.

## OPINION

DAVID R. LESLIE, Judge.

Appellant State of Minnesota ("State") seeks review of the trial court's judgment compelling it to commence condemnation proceedings against a 19.7–acre portion of respondents' land. The State also appeals the trial court's award to respondents of attorney fees. We reverse.

## FACTS

The land involved has been in the Thompson family for many years. Respondent Leslie Thompson (father of the other three respondents, all of whom are collectively referred to herein as the "Thompsons") has lived on the property for many years and has consistently farmed and grazed animals on the land. The parcel is transected by Highway 61 and contains about 73.37

acres, most of which lies north of Highway 61.

Although the topography of the entire parcel can be characterized as rolling, the northern-most quarter consists of a peninsula-shaped bluff surrounded on the north, east and south sides by a wooded ravine. The top of the bluff has always been farmed by the Thompsons, while the ravine areas have been used for animal grazing and gathering wood for fuel. The ravine on the north edge of the peninsula continues past the northern boundary of the Thompson land to the Cannon River, a few hundred feet beyond. This topography continues westerly through an adjoining property. A large, unique Indian burial mound formation stretches along the top of the peninsula.

In January of 1983, the Thompsons were approached by a road construction subcontractor, which sought to extract gravel from the Thompson land for an improvement project planned for Highway 61. The Thompsons entered into an agreement permitting gravel extraction from the peninsula. Throughout this period the land was zoned R–1 for single family residential.

As part of the gravel agreement, the subcontractor agreed to re-grade the land, filling in the ravine with soil removed from the bluff. The re-grading plan would flatten the bluff overlooking the river and grade the land to descend from the peninsula area west of the Thompson parcel's borders. The State, MNDOT and the City of Red Wing ("City") soon learned of these plans. In the city attorney's opinion, the plans involved mining, not land reclamation, and mining was not a permitted use of land zoned R–1. The Thompsons also sought to have their land rezoned I–1, light industrial, and the city attorney pointed out that mining is also not a permitted use of land zoned I–1. The Thompsons also sought a conditional use permit for mining. The city's planning director recommended that these requests be denied.

The State Trunk Highway Archaeologist, who works with MNDOT to manage the

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

impact of road construction on archaeological sites, apparently notified several agencies of the potential impact on the burial site. Soon the State Archaeologist, Christie A.H. Caine ("Caine"), learned of the Thompsons' plans to excavate the bluff. She wrote Leslie Thompson, informing him of the presence of the statutorily-protected human burial remains. The Thompsons' attorney responded, challenging the existence of remains. Caine provided specific verification and offered to assist the Thompsons in locating and marking the sites, and in developing plans which would maximize land use potential consistent with the burial remains. She also offered her assistance with possible removal and relocation of burials. The Thompsons never responded to Caine's offers.

After public hearings, the City Council voted to deny the rezoning and conditional use permit requests. Construction of Highway 61 ultimately used other gravel, but the Thompsons suffered no penalty for not providing gravel under their agreement. The Thompsons took no further action until filing this complaint against the City, State, and Caine. Among other claims, they alleged they were deprived of all reasonable uses of a 19.7–acre portion of their land. That 19.7 acres, never previously identified as a separate parcel, was designated as the peninsula and surrounding ravines. The mounds themselves are scattered over no more than four or five acres on top of the peninsula.

At trial, the only surviving claim against the State was that Minn.Stat. § 307.08 (1988), which protects human burial remains, effected an inverse condemnation of the 19.7–acre portion of the Thompsons' land. On January 13, 1989, the City settled with the Thompsons. That settlement granted the Thompsons a retroactive rezoning of their property from R–1 to I–1, effective June 13, 1983, and also granted a conditional use permit for a period of 30 months, retroactive to June 13, 1983. The claims against the City were dismissed with prejudice.

After trial, the court found that the statute effected an inverse condemnation

against the Thompsons' property. The trial court ordered the State to commence condemnation proceedings within 30 days and to compensate the Thompsons, under Minn.Stat. § 117.045 (1988), for a portion of their attorney fees, excluding those expenses incurred in bringing claims against the City. The State was ordered to pay more than $24,000 in attorney fees to the Thompsons. The findings and conclusions were amended and the amended final judgment was entered on June 26, 1989. The State appeals.

## ISSUES

1. Were the Thompsons' claims ripe for adjudication?

2. Did the trial court err in compelling the State to commence condemnation proceedings against the Thompsons' land?

3. Did the trial court err in ordering the State to reimburse the Thompsons' attorney fees?

## ANALYSIS

■ Because of technical errors in the original judgment, the State moved for amendments. The amended judgment was entered on July 26, 1989. Because the State did not move for a new trial, the scope of review on appeal is limited to determining whether the evidence sustains the amended findings and whether the amended findings sustain the amended conclusions of law and amended judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

### I.

The State repeatedly challenged the Thompsons' claims as not ripe for adjudication. Although the trial court never directly addressed this challenge, the State correctly argues that by hearing the claims on the merits, the trial court implicitly ruled that the Thompsons' claims were ripe for review.

■ Where a land owner has not yet obtained a final decision regarding application of a land regulation to the particular property in question, the claim is not ripe

for review. *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). The Thompsons asked the City to grant rezoning of their land and to issue a conditional use permit for a gravel mining operation. This request was denied for a variety of reasons.

A challenge to the application of a regulation is not ripe when the landowners have not submitted a development plan. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). The Thompsons never submitted any development plans or proposals to demonstrate proposed uses for the land. A takings claim also is not ripe where only one plan is rejected and no other plan is proposed. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 136–37, 98 S.Ct. 2646, 2665–66, 57 L.Ed.2d 631 (1978). The only plan the Thompsons ever submitted was for gravel extraction and re-grading.

■ The Thompsons concede that they never responded to offers by the State and Caine to assist in locating the mounds, in seeking relocation if necessary, and developing alternate uses consistent with the applicable statute. After learning of the possible conflict between the gravel extraction plans and the existing burial mounds on their property, the Thompsons did nothing for almost a year and a half and then sued the State seeking to compel condemnation. It is not clear what impact the statute had on the City's decision to deny the Thompsons' requests. However, there has been no final determination by any State agency with regard to application of the statute to the parcel in question.

Economic impact and interference with expectation interests cannot be evaluated until after a final application of the regulations to the land in question. *MacDonald Sommer & Frates v. Yolo County*, 477 U.S. 340, 349, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); *Williamson*, 473 U.S. at 191, 105 S.Ct. at 3119 (citing *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659). Here, there has been no final State application of the statute to the Thompsons' property. Therefore, the takings claims should

have been dismissed as premature. However, because the trial court considered the merits of this case, we will review its decision. *Hay v. City of Andover*, 436 N.W.2d 800, 805 (Minn.App.1989).

II.

■ Whether a taking has occurred is a question of law which this court may review de novo. *Alevizos v. Metropolitan Airports Commission*, 298 Minn. 471, 484, 216 N.W.2d 651, 660–61 (1974). The trial court's finding that the protected human burial ground deprives the plaintiffs of all reasonable uses of 19.7 acres of their 73.37 acre parcel is not supported by the record and is in reality a conclusion of law.

■ The right to use property as one wishes is subject to, and limited by, the proper exercise of police power in the regulation of land use. Such regulation does not constitute a compensable taking unless it deprives the property of all reasonable use. *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757, 761 (Minn.1982) (citation omitted). Where a property can be used for agricultural and residential purposes, as is the Thompson parcel, the parties are not deprived of all reasonable use. *Id.* at 766. The burial mounds qualify as a rare and unique portion of the property which can be used to meet open space requirements, with construction arranged around the portion prohibited from being destroyed. *Id.* Where only one functional use has been denied, such as gravel mining, it is purely speculative to conclude that all reasonable use is denied. *Id.* The Thompsons had been reasonably using the land for agricultural and residential purposes and were never threatened with deprivation of this use. Therefore, they failed to establish that this statute effects an inverse condemnation.

The trial court also found as fact that the statute contains both arbitration and enterprise elements, which caused a substantial diminution in the market value of the 19.7 acres and deprived the Thompsons of all reasonable use of their land. These findings constitute conclusions of law.

■ The arbitration/enterprise analysis was adopted by the United States Supreme Court in *Penn Central*, 438 U.S. 104, 98 S.Ct. at 2646. The Minnesota Supreme Court applied the analysis in *McShane v. City of Faribault*, 292 N.W.2d 253 (Minn.1980) (zoning regulation, which burdened private land underneath flyway of municipal airport, adopted to benefit governmental *enterprise;* therefore, standard employed was whether substantial diminution in market value occurred). The enterprise test is applied where a regulation burdens land owned by a few individuals, to benefit a specific government enterprise which serves the public. *Id.* at 258-59.

Where no specific government enterprise benefits from the regulation, its purpose involves government *arbitration* between competing land uses. The standard employed is whether a deprivation of all reasonable use has resulted. The arbitration test applies where comprehensive regulations create reciprocal benefits and burdens for citizens in general. *McShane*, 292 N.W.2d at 257-58. Regulations for the purpose of historic preservation do not constitute enterprise functions. *Id.* at 259 n. 4 (citing *Penn Central*, 438 U.S. 104, 98 S.Ct. 2646). *McShane* establishes that in Minnesota, enterprise function analysis is triggered only where a specific governmental enterprise takes an effective easement, causing a substantial diminution in market value. In the absence of such an enterprise, the arbitration function analysis, with its deprivation of reasonable use standard, is applied.

■ The Thompsons alleged that an energy park planned by the City was the specific government enterprise benefited by restrictions the statute imposed on the Thompsons' property. The City apparently had planned an energy park but was forced to change its plans significantly when the burial mounds were brought to its attention. This chain of burial mounds extends from the Thompson property to the property the City had planned to buy. The alleged taking challenged by the Thompsons involves a state statute, which did not benefit the City's energy park plans at the Thompsons' expense. Rather, the City was similarly forced to cope with the presence of protected remains. The purposes of the statute bear no relationship to any government enterprise.

■ Regulation of land use does not constitute a compensable taking unless it deprives the property of all reasonable use. *Larson v. County of Washington*, 387 N.W.2d 902, 907 (Minn.App.1986), *pet. for rev. denied* (Minn. Aug. 20, 1986) (quoting *McShane*, 292 N.W.2d at 257). The burden is on the landowner to show deprivation of all reasonable use. *Larson*, 387 N.W.2d at 907. Where "secondary uses" remain, no taking has been established. *Id.* at 908. Here, the trial court found that the State's regulation deprived plaintiffs of all reasonable use of 19.7 acres. This amended finding of fact contradicts the evidence. Furthermore, this statutory interpretation by the trial court is properly a matter of law to which this court need give no deference. *Hibbing Education Association v. Public Employment Relations Board*, 369 N.W.2d 527, 529 (Minn.1985).

The record establishes that the Thompsons have consistently farmed and grazed the entire property. This activity is not prohibited, even atop the actual mounds. The statute prohibits destruction, mutilation, injury or removal of human burials. Minn.Stat. § 307.08, subd. 2. It is not shown whether the extensive plowing performed by the Thompsons has caused damage, however, the State has never interfered with the Thompsons' longstanding agricultural activities, nor have the Thompsons accepted the State's offer of assistance in evaluating the compatibility of these or other land use plans.

■ The Thompsons also contend that their agricultural and grazing activities are forbidden because the statute prohibits removal of any tree, shrub or plant from a burial site. Minn.Stat. § 307.08, subd. 2. As the State points out, lawn mowing and gardening at cemeteries are clearly not prohibited. In referring to the *removal* of any tree, shrub or plant from any public or private cemetery or unmarked human buri-

al ground, the statute protects trees, shrubs and ornamental plants from uprooting or destruction. We disagree that all agricultural and grazing activities are therefore categorically prohibited. In any event, the only activity that the Thompsons have been prohibited from conducting is the gravel mining operation, which was frustrated by a combination of conditions, many of which are unrelated to Minn.Stat. § 307.08.

Not every regulation challenged as effecting a taking can give rise to an action for inverse condemnation. Only where the taking or damage is irreversible will such an action lie. *McShane*, 292 N.W.2d at 259. The Thompsons have failed to demonstrate an enterprise function for which the substantial diminution in market value standard is applicable, and have failed to establish that the statute deprived them of any reasonable use of that portion of their land. As a matter of law, the requisite elements of a compensable taking are absent here.

### III.

The trial court ordered the State to reimburse the Thompsons for that portion of their attorney fees deemed to have arisen from their case against the State, an amount in excess of $24,000. The trial court concluded that pursuant to Minn.Stat. § 117.045, the Thompsons were entitled to their attorney fees. That statute entitles landowners to petition for reimbursement of attorney fees upon successfully compelling eminent domain proceedings against real property omitted from any current or completed eminent domain proceeding. That language has been held to include compelling condemnation proceedings where no current or completed eminent domain proceeding was brought. *Spaeth v. City of Plymouth*, 344 N.W.2d 815, 823 (Minn.1984).

In *Spaeth*, the supreme court held that whenever a landowner successfully brings an action to compel eminent domain with respect to land which was omitted from a proceeding which *should have been* commenced, Minn.Stat. § 117.045 applies.

*Spaeth* at 823. Unlike *Spaeth*, the Thompsons failed to establish facts sufficient to support the conclusion that a taking occurred. Thus, in view of our disposition of their takings claim, the Thompsons are not entitled to attorney fees under the eminent domain statute.

### DECISION

The Thompsons' claims were not ripe for adjudication because no final State action had been taken with respect to the land in question. Minn.Stat. § 307.08 does not serve an enterprise function. The trial court erred in deciding that the State, through Minn.Stat. § 307.08, effected a taking of the Thompsons' property, and in ordering the State to commence condemnation proceedings against a portion of the land. The trial court's decision awarding attorney fees is also reversed.

Reversed.