**SUPERAMERICA GROUP, INC., A DIVISION OF ASHLAND OIL, INC., Appellant,**

v.

**CITY OF LITTLE CANADA, Respondent.**

No. C6–95–802.

Court of Appeals of Minnesota.

Nov. 7, 1995.

Review Denied Jan. 5, 1996.

*Id.*

Gary A. Van Cleve, Timothy J. Keane, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for Appellant.

Paul T. Ostrow, Sweeney, Borer & Ostrow, St. Paul, for Respondent.

Considered and decided by SHORT, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

This zoning dispute involves an application for a conditional use permit to operate a gas station and convenience store facility at the intersection of Little Canada Road and Country Drive in the City of Little Canada (the city). When the city denied the permit, SuperAmerica Group, Inc., a division of Ashland Oil, Inc., sued to declare the city's action illegal and to mandate issuance of the conditional use permit. On appeal from the trial court's grant of summary judgment in favor of the city, SuperAmerica argues the record does not support denial of its application. We affirm.

## FACTS

SuperAmerica applied for a conditional use permit to construct a facility overlooking Interstate 35E. While the area is zoned for commercial business, the proposed use requires the city's consent under Little Canada, Minn., Mun.Code § 912.040.C, in part, to regulate and avoid conflict between vehicular access points and through traffic movement.

After conducting a study of the roadway system's capacity to accommodate additional traffic, an independent traffic consultant testified it would be difficult to complete left turns during peak traffic, but the amount of traffic generated by the proposed use would be "relatively small, especially compared to the total volumes already on Little Canada Road." The traffic consultant hired by SuperAmerica supported these conclusions and submitted a technical memorandum reporting that the site was capable of supporting the proposed use. The city's planning commission considered the application and, by a split vote, recommended approving the permit because the "traffic issue is a pre-existing condition and data suggests that the development of a SuperAmerica will not exacerbate conditions." At a public hearing, numerous residents and local business owners testified against issuance of the permit due to probable traffic aggravation and concerns relating to crime and pollution. The public meeting was recorded and summarized in prepared minutes.

Following the public hearing, the city council denied SuperAmerica's application. The city concluded issuance of the conditional use permit was inconsistent with its comprehensive land use plan.

## ISSUE

Did the city act unreasonably, arbitrarily, or capriciously in denying SuperAmerica's application for a conditional use permit?

## ANALYSIS

Land use decisions are entitled to great deference and will be disturbed on appeal only in instances where the city's decision has no rational basis. *Carl Bolander & Sons Co. v. City of Minneapolis,* 502 N.W.2d 203, 207 (Minn.1993); *White Bear Docking & Storage v. City of White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982). In a zoning action, we review directly the proceedings before the zoning authority, not the trial court's findings. *Bolander,* 502 N.W.2d at 207. Where the municipal proceedings are fair and complete, review is on the record before the municipal authority. *Swanson v. City of Bloomington,* 421 N.W.2d 307, 313 (Minn.1988).

A zoning ordinance should be construed (1) according to the plain and ordinary meaning of its terms, (2) in favor of the property owner, and (3) in light of the ordinance's underlying policy goals. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608–09 (Minn.1980); *Medical Servs., Inc. v. City of Savage,* 487 N.W.2d 263, 266 (Minn.App.1992). General rules of statutory construction may also aid interpretation. *See Batalden v. County of Goodhue,* 308 N.W.2d 500, 501 (Minn.1981) (interpreting a zoning ordinance using canons of statutory construction).

A city's comprehensive plan contains objectives, policies, standards, and programs to guide public and private land use. Minn.Stat. § 473.859, subd. 1 (1994). Cities adopt zoning ordinances to execute the poli-

cies and goals of their land use plan. Minn. Stat. § 462.357, subd. 1 (1994). While expressly authorized by a zoning ordinance, "conditional uses" require the zoning authority's consent because of inherent hazards or location problems. *Zylka v. City of Crystal*, 283 Minn. 192, 195, 167 N.W.2d 45, 48–49 (1969). Despite this discretion, a city council may deny a conditional use permit only for reasons relating to the public health, safety, and general welfare or for incompatibility with a city's land use plan. *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757, 763 (Minn.1982); *C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 324–25 (Minn.1981).

■ The city will issue a conditional use permit for the construction and operation of a convenience gas, grocery, and food operation provided, in part, that:

> Vehicular access points shall create a minimum of conflict with through traffic movement * * *.

Little Canada, Minn., Mun.Code § 912.040.-C.9 (1995). SuperAmerica does not challenge the city's authority to require a conditional use permit under Minn.Stat. § 462.3595, subd. 1 (1994). Rather, SuperAmerica argues the city's comprehensive land use plan provides a legally insufficient basis for denying SuperAmerica's conditional use permit. *See C.R. Investments*, 304 N.W.2d at 327–28 (holding a plan's requirements that a proposed use constitute "an 'improvement' on the plan" and be "consistent with the plan's general intent and purpose" are unreasonably vague and subjective and, thus, are a legally insufficient basis for denial of a permit).

The city's comprehensive plan specifically calls for restriction of commercial development at street intersections and prevention of overcrowding and overintensification of land use. Those established standards are not vague or subjective requirements. By adopting Little Canada, Minn., Mun.Code § 912.040.C.9, the city implemented its legitimate land use objective of avoiding additional traffic congestion.

The record demonstrates: (1) the gas station and convenience store facility would be located at the intersection of Little Canada Road and Country Drive; (2) the site already experiences heavy traffic congestion; (3) left turns at the site are extremely difficult during peak periods; and (4) the west ramp on Little Canada Road is currently operating at an estimated 90 percent traffic capacity. Because the city council could rationally conclude the proposed use is inconsistent with definite and objective guidelines provided in the city's comprehensive land use plan, the city council lawfully denied SuperAmerica's application. *See, e.g., Hubbard Broadcasting*, 323 N.W.2d at 762–63 (holding inconsistency with plan based on "intention to preserve and enhance the low-density residential-agricultural character of the community and its scenic beauty" a legally sufficient reason to deny permit); *Barton Contracting Co. v. City of Afton*, 268 N.W.2d 712, 717–18 (Minn.1978) (upholding denial of special use permit because plan was "permeated with evidence of a strong desire to preserve the rural character and unique scenic beauty").

■ SuperAmerica also argues the city arbitrarily rejected the uniform conclusions of all expert witnesses in favor of neighbors' opposition to the issuance of the permit. While a city may not reject expert testimony without adequate supporting reasons, those reasons need not be based on expert testimony. *See Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn.1984) (holding denial of permit must be based on something more concrete than "non-specific" neighborhood opposition); *BBY Investors v. City of Maplewood*, 467 N.W.2d 631, 635 (Minn.App.1991) (holding city may rebut expert testimony with nonexpert testimony), *review denied* (Minn. May 23, 1991); *Scott County Lumber Co. v. City of Shakopee*, 417 N.W.2d 721, 728 (Minn.App. 1988) (finding city could not prefer landowners' opinions, without a concrete basis, over experts' conclusions), *review denied* (Minn. Mar. 23, 1988). A city may deny a conditional use permit if the proposed use would adversely affect the general welfare. *Zylka*, 283 Minn. at 197, 167 N.W.2d at 49–50. Further, a city may consider neighborhood opposition if based on concrete information. *See Scott County Lumber*, 417 N.W.2d at 728 (holding community opposition insufficient

without concrete supporting evidence); *see also Swanson,* 421 N.W.2d at 313 (acknowledging city may consider neighborhood opposition).

In the present case, residents expressed more than a vague concern about future neighborhood problems. Numerous business owners and residents of neighboring apartment buildings testified about "current congestion" and specifically that "it takes three to four light changes just to get through the intersection." These nonexpert witnesses spoke of existing, daily traffic problems. *See Corwine v. Crow Wing County,* 309 Minn. 345, 361, 244 N.W.2d 482, 491 (1976) (noting status as area residents is sufficient "to establish competency and personal knowledge" of many alleged facts), *overruled in part on other grounds by Northwestern College v. City of Arden Hills,* 281 N.W.2d 865 (Minn.1979); *St. Croix Dev., Inc. v. City of Apple Valley,* 446 N.W.2d 392, 399 (Minn.App.1989) (finding citizen complaints concerning road with pre-existing traffic problem well-founded based on record), *review denied* (Minn. Dec. 1, 1989). While expert witnesses testified an increase in traffic due to SuperAmerica's use would be "relatively small," they also testified that: (1) making a left turn from the site onto Little Canada Road was extremely difficult, and often impossible, due to traffic congestion; (2) many vehicles had to wait two cycles at the stoplight before completing a turn; (3) the proposed use would cause three times as much (from 800 trips to 2,500) traffic as the operation of a restaurant during peak times; (4) the restaurant currently occupying the site closes at 3:00 p.m. so there is no reliable traffic data on peak hours; and (5) during peak hours, between 5 and 17 cars typically are waiting at the stoplight on Country Drive. The zoning authority properly considered all testimony, including the experts' acknowledgement of existing traffic congestion and the neighbors' concrete, current observations. The experts' testimony did not mandate issuance of the permit.

## DECISION

The city denied SuperAmerica's application for a conditional use permit because the proposed use was inconsistent with definite and objective requirements contained in the city's comprehensive land use plan and would adversely affect the general welfare. The city did not act arbitrarily or capriciously because it had a rational basis for denying the conditional use permit.

**Affirmed.**