**Robert TRISKO, et al., Plaintiffs,**

v.

**CITY OF WAITE PARK, Respondent,**

**Meridian Aggregates Company, a Montana corporation, Appellant.**

**MERIDIAN AGGREGATES COMPANY, a Montana corporation, Appellant,**

v.

**CITY OF WAITE PARK, Respondent.**

No. C0–97–86.

Court of Appeals of Minnesota.

July 15, 1997.

Review Denied Sept. 25, 1997.

Gordon H. Hansmeier, Rajkowski Hansmeier Ltd., St. Cloud, for Respondent.

Gary A. Van Cleve, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for Appellant.

Considered and decided by HUSPENI, P.J., and WILLIS and SCHULTZ *, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

Appellant Meridian Aggregates Company challenges the trial court's summary judgment for respondent City of Waite Park denying Meridian's application for a conditional use permit to operate a rock quarry. Because we conclude that the city's denial of the permit was unreasonable, arbitrary, and capricious, we reverse and order the issuance of the appropriate conditional use permit.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Appellant operates a 98–acre rock quarry on a 250–acre site and owns an adjacent 142–acre parcel of property that it purchased in 1992 from another mining company on which it plans to develop a 52.25–acre quarry. Trunk Highway 23 separates a portion of the existing quarry from the proposed quarry site. Both properties were located in the Town of St. Cloud (the town) until December 30, 1995, when the City of Waite Park (the city) annexed appellant's property as part of a merger agreement with the town.

In July 1995, appellant petitioned the town for a conditional use permit to develop and operate the proposed quarry. Although the town had zoned the property for heavy industrial use, it required a permit for mining activities. Following the preparation of an Environmental Assessment Worksheet, the town solicited comments from several governmental agencies and interested citizens. On December 14, 1995, despite citizen protests, the town planning commission recommended the approval of the permit with 22 conditions. On December 18, due to the pending annexation of the proposed quarry site by the City of Waite Park, the town board voted to defer a final decision and to transfer the review process to the city.

Pursuant to the merger agreement, the city adopted the town's then-existing zoning standards governing the annexed property. The city council first considered appellant's proposal on January 9, 1996, and heard some discussion from interested parties. On March 13, the city council held a public hearing on appellant's permit application. Appellant submitted reports and testimony addressing groundwater, dust, noise, blasting, property values, and land use issues as well as a proposed permit. The council also received substantial public comment from interested citizens and representatives from neighboring businesses. On March 19, the city council voted four to one to deny appellant's permit application and issued the following findings:

pointment pursuant to Minn. Const. art. VI, § 10.

A. The granting of the conditional use permit will impede the normal and orderly development and improvement of surrounding vacant property for predominant uses in the area. The property for which this use is proposed lies in the center of the newly aligned City of Waite Park.

B. That adequate utilities, drainage and other necessary facilities are not provided for a proposal such as this in the middle of the City.

C. That adequate measures to prevent or control fumes, dust, noise, vibrations or concussions from explosions cannot be adequately controlled so these problems would constitute a nuisance to the development in the area.

D. There has been no demonstrated need for the proposed use.

E. The proposed use of this property will be inconsistent with the type of existing and future development in this area.

F. Denial of this conditional use permit preserves and protects the land use policies of the newly annexed portions of the City of Waite Park. The annexation of this property from the Township together with surrounding property will result in increased population, development and traffic because of the expansion and new availability of public sewer and water services.

Appellant commenced a declaratory judgment action against the city challenging the city's denial of the permit. After all parties moved for summary judgment, the trial court granted summary judgment for the city.[1] Although the trial court rejected the findings on the adequacy of utilities and drainage and on the protection of land use policies, it found that the record supported the city's findings regarding the project's potential adverse impact on present and future development, the lack of demonstrated need for the new quarry, and inadequate measures to control dust and vibrations.

1. The trial court consolidated this case with a lawsuit filed by various citizens challenging the city's decision that the proposed quarry project did not require an Environmental Impact State-

## ISSUE

Was the city's denial of appellant's conditional use permit application unreasonable, arbitrary, or capricious where the denial is based on its findings that the proposed quarry posed serious development and land use concerns, that the proposed quarry lacked a demonstrated need, and that appellant proposed inadequate measures to control dust and vibrations?

## ANALYSIS

In reviewing actions by a governmental body, the appellate court focuses on the proceedings before the decision-making body, not the findings of the trial court. *Carl Bolander & Sons Co. v. City of Minneapolis*, 502 N.W.2d 203, 207 (Minn.1993). On appeal from a trial court's decision affirming a city council's denial of a conditional use permit, the appellate court independently reviews "the record which was before the trial court together with the city's decision without affording any special deference to the trial court's review." *Scott County Lumber Co. v. City of Shakopee*, 417 N.W.2d 721, 726 (Minn.App.1988), *review denied* (Minn. Mar. 23, 1988).

We review a municipal body's land use decision to determine whether it was unreasonable, arbitrary, or capricious. *Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn.1988). When a city council states its reasons for denying the permit, we limit our review to the legal sufficiency and the factual bases for those reasons. *Scott County Lumber*, 417 N.W.2d at 727. "Not all reasons" for the denial of a conditional use permit "need be legally sufficient and supported by facts in the record." *Hubbard Broad., Inc. v. City of Afton*, 323 N.W.2d 757, 765 n. 4 (Minn.1982). Thus, a city's denial of a land use request is not arbitrary when at least one of the reasons given for the denial satisfies the rational basis test. *St. Croix Dev., Inc. v. City of Apple Valley*, 446 N.W.2d 392, 398 (Minn.App.1989), *review denied* (Minn. Dec. 1, 1989).

ment. The trial court granted summary judgment for the city and appellant on the citizens' lawsuit, which was not appealed.

## 1. Development and Land Use

■ Addressing the city's findings that the proposed quarry would impede present and future development, appellant asserts that the city's reasons are legally insufficient because they are not based on the controlling land use plan and zoning standards and that they lack any factual basis because the record establishes that no development of the proposed quarry site is economically feasible until the granite is removed. The trial court concluded that the city properly determined that the proposed quarry threatened the expected expansion of commercial and residential development in the surrounding area.

After reviewing the entire record, we conclude that the city's findings regarding the effect on present and future development are legally insufficient. The city based its findings on a provision in the town's ordinance providing that it may deny a conditional use permit if the use will impede the "normal and orderly development and improvement of surrounding vacant property for predominant uses in the area" and on sections of the town's land use plan that generally require the "orderly" development of commercial and industrial uses that "are in minimum conflict with surrounding land uses" through "sound" planning. A municipality may not base the denial of a conditional use permit on land use standards that are "unreasonably vague" or "unreasonably subjective." *C.R. Invs., Inc. v. Village of Shoreview,* 304 N.W.2d 320, 327–28 (Minn.1981) (reversing denial of conditional use permit for 19 quad homes because the plan standards, which required the applicant to demonstrate that "the proposal constitutes an 'improvement' on the plan and is consistent with the plan's general intent and purpose" and that the proposed use "is equal to or better than, single-family usage," were "unreasonably vague" and "unreasonably subjective"). The "normal and orderly development" language on which the city relied, absent stronger and more specific language, creates an "unreasonably vague" and "unreasonably subjective" land use standard that should not defeat the town's more specific allowances for mining.

The town's zoning ordinances and comprehensive land use plan expressly contemplated the expansion of mining to the proposed quarry site. The ordinance zoned the proposed quarry site for heavy industrial uses, which expressly permits mineral extraction, and provides general and specific conditions for mining. Moreover, regarding the location of both quarry sites, the town's land use plan states:

> There are presently existing several industrial areas which should be allowed to continue and expand as necessary.
>
> * * * * * *
>
> The geology of the area is such that granite outcropping and granite close to the surface would require a tremendous public investment in terms of utilities to support development.
>
> * * * * * *
>
> All development shall be carefully reviewed and controlled with respect to the geology of the area. The Town recognizes the potential conflict between the granite industry and the desires of persons to locate and build residential dwellings in areas of granite outcrops and old quarries. Expansion may take place in areas owned for potential granite extraction provided it meets all ordinances and any special requirements the Town may require.

In addition, as the trial court noted, the city had no such promulgated land use policies.

The city relies on *Barton Contracting Co. v. City of Afton,* 268 N.W.2d 712, 717–18 (Minn.1978) (upholding denial of special use permit to expand operation of gravel pit to adjacent land where the city's land use plan "is permeated with evidence of a strong desire to preserve the rural character and unique scenic beauty of Afton and the St. Croix Valley"), and *Hubbard,* 323 N.W.2d at 759 & n. 1, 763 (relying on *Barton* and upholding city's denial of special use permit for 125–foot satellite tower and satellite station on top of "geologically rare" hill because it was inconsistent with rural and scenic purposes of city's land use plan and within the city's discretion in interpreting the plan). But the City of Afton's comprehensive land use plan expressed its "strong desire to preserve the rural character and unique scenic beauty of Afton and the St. Croix Valley." *Hub-*

*bard,* 323 N.W.2d at 763; *Barton,* 268 N.W.2d at 717. Moreover, in *Hubbard,* the proposed satellite tower and station would have contradicted the city's zoning ordinances and land use plan because the site was located in an area specifically zoned for agricultural use and labelled as "a general 'protection-open space' area" on the plan map. 323 N.W.2d at 762. In this case, neither the town's zoning ordinances nor its land use plan contained provisions similar to those in *Barton* and *Hubbard* regarding the unique nature of the land at issue. Rather, the town's land use plan expressly contemplated the expansion of mining "in areas owned for potential granite extraction" and encouraged such expansion "as necessary."

We also conclude that appellant has shown that the city lacked a factual basis to find that the proposed quarry would impede present and future development. The city primarily relies on an alternative site development "approach" prepared by the neighbors' planner that cites the need for some commercial sites along Highway 23 and proposes commercial, residential, and mixed use of the quarry site. But the planner provides no determination on the feasibility of such uses, and the town zoned the area surrounding the proposed quarry for industrial and agricultural uses, not commercial or residential development. A report submitted by appellant concluded that a "substantial part" of the proposed quarry site would be "undevelopable with or without the quarry" and that the area available for short-term development "is not likely to be used for commercial or retail purposes" because of "difficult traffic patterns, the lack of accessibility, and the existing land use surrounding the site." In addition, the operating quarry has not impeded development around it because several businesses have opened nearby since 1985.

The record contains substantial evidence that the development of the quarry site is not feasible until the granite is removed, due to the cost of installing utilities. The town's land use plan states that the "granite outcropping and granite close to the surface would require a tremendous public investment in terms of utilities to support development." Appellant's expert stated that the granite is a "significant barrier" to future development of the proposed quarry site because the rock outcropping would make the installation of utilities "tremendously expensive" unless removed. The expert's report added that the "rock outcropping and a very thin soil overburden" would make public utilities "impossible" to provide because they would be "extraordinarily and prohibitively costly," thereby creating a "virtually undevelopable" area. The only contrary evidence, testimony from a real estate developer that "you would not hit any rock as far as the city water and sewer going in," does not indicate either the basis for this conclusion or the economic feasibility of installing utilities.

Because the city's land use standards are legally insufficient and its findings lacked supporting evidence, the city acted arbitrarily by finding that the quarry would impede the "orderly" development of the surrounding area. *Scott County Lumber,* 417 N.W.2d at 727 (stating when a zoning ordinance specifies standards that the city must apply in determining whether to grant a conditional use permit and the applicant fully complies with those specified standards, "a denial of the permit is arbitrary as a matter of law").

### 2. Demonstrated Need

Appellant next challenges the city's finding, which the trial court upheld, that there was "no demonstrated need for the proposed use" because appellant already operated one quarry in the city and had not exhausted the granite supply at that quarry.

■ Appellant first alleges that the city's finding on lack of demonstrated need is legally insufficient, asserting that when the zoning ordinance expressly authorizes a conditional use by permit, the city's police power is limited to consideration of the public's health, safety, and welfare, not business necessity. In addition to these reasons, however, a municipality may deny a conditional use permit for incompatibility with the comprehensive land use plan. *Hubbard,* 323 N.W.2d at 763; *SuperAmerica Group, Inc. v. City of Little Canada,* 539 N.W.2d 264, 267 (Minn.App. 1995), *review denied* (Minn. Jan. 5, 1996). Section 1.03 of the town's comprehensive land use plan expressly requires the city "[t]o

carefully consider both the needs of the individual landowner and the needs of the public at large" when developing and implementing "plans and controls relating to land use." The demonstrated need requirement for issuing a conditional use permit implements the policy of section 1.03, which is one of several "definite and objective guidelines provided in the [town's] comprehensive land use plan." *SuperAmerica*, 539 N.W.2d at 267. Because the city may justify its denial of the permit for lack of demonstrated need or as a use incompatible with the town's land use plan, the city had a legal basis to consider need.

■ Appellant next asserts that the city's findings on demonstrated need lack a factual basis because the rock at the proposed site is unique, it can be mined economically and efficiently, and development at this time would allow construction of an underpass. Finding no demonstrated need, the city relied on estimates that the existing quarry should continue to operate for at least twenty more years and statements made by a member of the city council that representatives from appellant and another local quarry had informed her that approximately six local quarries are "all mining the exact same rock" and that there is no need to "inconvenience twice the number of people" by opening the proposed quarry. But the record provides no support for the councilmember's assertions.[2]

The record, however, contains substantial evidence regarding appellant's need for the quarry. Appellant's expert testified that, "in the interest of cost savings," the industry requires "this kind of operation periodically throughout the state and the United States" and that "[t]here are relatively few locations where this kind of operation can occur." Appellant's regional manager testified that its geologists had "prospected the area from Chicago to Montana" and found "no other rock near the Burlington Northern Railroad that had the quality of the Waite Park sites," that the proposed quarry site is a "unique deposit of granite" because "it's close enough to the surface that it can be mined," and that

"this rock is special" because its "chemical composition" makes it "tough and durable." In addition, appellant had negotiated an agreement with the state transportation department to construct an underpass between the existing quarry and the proposed quarry as part of the department's scheduled 1997 improvements on Highway 23, and this underpass would eliminate any additional truck traffic on public roads or any new trains crossing the highway to get to the new quarry.

Considering the unique granite deposits at the proposed site and the scheduled underpass, we conclude that the city acted arbitrarily because the record lacks a factual basis to support a finding of no demonstrated need. When the record adequately supplies the reasons underlying a business decision, neither a municipal body nor a court should override that business judgment.

### 3. Measures to Prevent Nuisance

Appellant asserts that the city's finding that appellant showed inadequate measures to prevent nuisance from fumes, dust, noise, vibrations, or concussions is not supported by the record. The trial court concluded that evidence submitted by neighbors, although somewhat speculative, supported the city council's concern that blasting would constitute a nuisance. On appeal, the city only argues that the record supports its findings on dust and vibrations.

■ Appellant primarily contends that the city improperly discounted appellant's expert testimony in favor of neighborhood opposition consisting of vague and speculative opinions. A municipality must base the denial of a conditional use permit on "something more concrete than neighborhood opposition and expression of concern for public safety." *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984) (concluding that "non-specific testimony that the proposed McDonald's poses potential traffic hazards" fails to rebut "the city engineer's testimony that the intersection

---

**2.** After this statement, another councilmember suggested input from appellant, but the mayor denied the request, stating, "No. I promised everybody that there would be no input from the audience."

could handle the anticipated traffic"). "While a city may not reject expert testimony without adequate supporting reasons, those reasons need not be based on expert testimony." *SuperAmerica*, 539 N.W.2d at 268 (holding that expert testimony, which stated that proposed gas station would produce only a "relatively small" increase in traffic, did not mandate issuance of conditional use permit where city properly considered neighbors' "concrete" observations concerning "existing, daily traffic problems").

The record reveals that the city improperly discounted appellant's expert evidence in favor of neighbors' unsubstantiated concerns. Although at least one neighbor stated that many older residents in the past had contracted silicosis, a respiratory disease, from granite dust produced by the existing quarry and several neighbors asserted that they expected an increase in dust-related respiratory problems if the proposed quarry opened, expert testimony established that the exposure level for silicosis dust surrounding the quarries is "one-quarter of the level that is considered safe," which would create "essentially no risk." The city relies on *SuperAmerica*, but that court based its decision on neighbors' unscientific observations regarding traffic congestion, not scientific observations regarding the health consequences of dust and vibrations. *See Scott County Lumber*, 417 N.W.2d at 728 (reversing city council's denial of conditional use permit because city discounted expert testimony in favor of neighbors' opinions concerning the proposed gravel pit's effect on their land value, water pollution, noise nuisance, and dust problems).

Thus, because the neighbors based their fears of an expected increase in respiratory problems on unscientific speculation, not medical fact, the city acted arbitrarily by ignoring appellant's expert evidence.

 Other evidence in the record also supports our conclusion that the city acted arbitrarily. The proposed permit would create no net increase in blasting from that currently allowed by the existing quarry's permit and would require appellant to employ "state-of-the-art dust control techniques" to modify its operations during periods of high winds to mitigate possible dust problems, and to use water to control dust. Although appellant's regional manager commented that the quarry would create some "nuisance dust" that would settle on others' property, he qualified that statement by declaring that because blasting creates mostly "very coarse dust" and appellant would locate the quarry "a large distance" from the site's perimeter, "the majority of the dust drops before it gets to the perimeter." An expert's report concluded that "the new operation will not generate more vibration for the neighbors than at the current time and most likely less." Although a councilmember commented that the proposed quarry would conduct surface-level blasting and that appellant's test did not address such blasting, appellant's expert stated that no difference in vibrations exists between surface-level and below-surface blasting. Moreover, several neighbors withdrew their initial opposition to the new quarry after consulting with appellant's representatives.[3]

---

**3.** The city contends that this court should not consider several affidavits submitted to the trial court because they were not in the record before the city council. In the affidavits, several neighbors, who previously had made comments against the proposed quarry, on which the city had relied, stated that they no longer opposed the new quarry. When review is conducted on the record, a court should receive additional evidence only on substantive issues raised and considered by the city council and then only on a determination that the additional evidence is material and that there were good reasons for failure to present it at the municipal proceedings. *Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn.1988). Here, the evidence is material because it relates directly to the dust and vibration issues, and appellant failed to pres-

ent this evidence before the city council because the city did not specify upon which evidence it had relied until it moved for summary judgment. Moreover, the city waived its objection to this evidence by failing to object before the trial court. *See Estate of Hartz v. Nelson*, 437 N.W.2d 749, 752 (Minn.App.1989) (holding that when allegedly inadmissible evidence has been admitted without objection, a party may not question its admissibility for the first time on appeal), *review denied* (Minn. July 12, 1989); *see also Crystal Beach Bay Ass'n v. Koochiching County*, 309 Minn. 52, 56–57, 243 N.W.2d 40, 43 (1976) (relying on agency report issued after county zoning decision and after trial court's review of that decision to uphold the granting of conditional use permit because an appellate court "has inherent power to look beyond the record where

Finally, the city's failure to propose additional measures to control dust and vibration or to identify its specific concerns over these potential problems supports a conclusion that the city acted arbitrarily. Appellant asserts that it would have followed certain conditions to prevent dust and vibration from becoming a nuisance.[4] Evidence that a municipality denied a conditional use permit without suggesting or imposing conditions that would bring the proposed use into compliance may support a conclusion that the denial was arbitrary. *See Minnetonka Congregation of Jehovah's Witnesses, Inc. v. Svee,* 303 Minn. 79, 85–86, 226 N.W.2d 306, 309 (1975) (reversing city's finding that church would be inconsistent with surrounding residential land use because "perhaps most importantly, there was no attempt made, either by the opponents or the council, to suggest or to impose conditions which would insure proper landscaping, setbacks, or ingress and egress"). In this case, the council merely concluded without further explanation that dust and vibrations "cannot be adequately controlled so these problems would constitute a nuisance."

The city acted arbitrarily because it based its denial of the conditional use permit solely on "neighborhood opposition and expression of concern for public safety." *Chanhassen Estates Residents Ass'n,* 342 N.W.2d at 340; *see Scott County Lumber,* 417 N.W.2d at 728.

## DECISION

The city council's denial of a conditional use permit to operate a rock quarry on property zoned for that purpose was unreasonable, arbitrary, and capricious because the city's decision was legally insufficient and lacked a factual basis in the record. The denial is reversed, and the issuance of the appropriate permit is ordered.

**Reversed.**

the orderly administration of justice commends it").

4. In denying the Environmental Impact Statement request, the city also found that conditions could be controlled to prevent an environmental impact, yet it subsequently found no conditions that could make them safe.