Ralph S. DRUM, Relator,

v.

MINNESOTA BOARD OF WATER &
SOIL RESOURCES, Respondent,

and

Douglas Soil and Water Conservation
District, Respondent.

No. C7–97–778.

Court of Appeals of Minnesota.

Jan. 20, 1998.

William G. Peterson, Wm. Peterson & Associates, Ltd., Bloomington, for relator.

Hubert H. Humphrey, III, Matthew Seltzer, Assistant Attorney General, St. Paul, for respondent Minnesota Board of Water & Soil Resources.

Daniel Lee, Assistant County Attorney, Alexandria, for respondent Douglas Soil & Water Conservation District.

Considered and decided by TOUSSAINT, C.J., and RANDALL, and FORSBERG, JJ.*

## OPINION

TOUSSAINT, Chief Judge.

Ralph S. Drum, a landowner, appeals by writ of certiorari from a decision of the Minnesota Board of Water and Soil Resources affirming a decision of the Douglas Soil and Water Conservation District to assert jurisdiction over a 15–acre body of water. Because the Minnesota Board of Water

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

and Soil Resources acted within its statutory authority to promulgate rules to implement the Wetland Conservation Act (the "Act"), we affirm.

## FACTS

Ralph S. Drum owns a homestead near Lobster Lake in Douglas County. A marsh is situated about 50 feet from his home. In 1971, the township built a road between Drum's property and Lobster Lake. Drum acquired the property in 1987. The marsh grew over the years until the water got near Drum's house and undermined the foundation.

Drum sought approval from the Douglas Soil and Water Conservation District (the "District") to install a drainage outlet at the elevation of 1374.9 Mean Sea Level (MSL). The District, on the other hand, did not want Drum to install a drainage outlet any lower than 1376.9 MSL. Drum requested an exemption or no-loss determination that would permit him to install the drain.

In the proceeding the District received evidence regarding the history of the surface area and elevation of the marsh and the surrounding topography. Drum introduced evidence that (1) the Department of Natural Resources' findings that the marsh was at one time less than ten acres in size; (2) a report by Russell Kastelle, a registered land surveyor and cartographer, establishing the history of the marsh's surface area and elevation; (3) a ditch that ran south of his house towards Lobster Lake was intercepted by a road; (4) sediment blocked the channel in the ditch; and (5) at the time of the hearing the marsh covered 15 acres and the water level on the marsh was 1375.3 feet MSL.

The District also received evidence from the Douglas County Technical Evaluation Panel (the "Panel"), which was established according to the requirements of the Act. *See* Minn.Stat. § 103G.2242, subd. 2 (1996); *see also* Minn. R. 8420.0240. The Panel made a field determination of the wetland boundary using procedures provided by the Act and

art. VI, § 10.

determined that the wetland boundary was at 1378.8 MSL. The Panel also determined that the wetland was within a landlocked basin and that increased precipitation was the biggest factor accounting for the increase in the area covered by the surface water of the wetland.

The District determined that it had authority to regulate the marsh pursuant to the Act. The District denied Drum's request for a permanent outlet at 1374.9 MSL and decided that the outlet elevation should be no lower than 1376.6 MSL because any lower elevation would result in a net loss of wetlands.

The District also determined that an exemption did not apply and that Drum failed to meet his burden of showing that the wetland was enlarged "solely by actions, the purpose of which was not to create the wetland." Minn. Stat § 103G.2241, subd. 5(3); *see also* Minn. R. 8420.0120, subpt. 10(iii). More specifically, he failed to demonstrate that the wetland increased in size solely as a result of the construction of the township road in 1971.

Drum appealed the decision to the Minnesota Board of Water and Soil Resources (the "Board"), which affirmed. The Board adopted the findings of the District and did not receive additional evidence.

## ISSUES

I.   Does the Douglas Soil and Water Conservation District have jurisdiction over Drum's wetland?

II.  Does Drum's proposed activity fall within an exemption to the Wetland Conservation Act?

III. Does the order constitute an unconstitutional taking in violation of the Fifth Amendment of the United States Constitution?

## DECISION

We review the Board's decision to determine whether it exceeds statutory authority, violates due process, or lacks sufficient evidentiary support. *Markwardt v. State Water Resources Bd.*, 254 N.W.2d 371 (Minn.1977). Because this appeal represents the first judicial review of this action, this court should independently examine the agency's record without deferring to its legal conclusions. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977); *Dullard v. Minnesota Dep't of Human Servs.,* 529 N.W.2d 438, 442 (Minn.App.1995). Nonetheless, this court should defer to the agency's "expertise and [its] special knowledge in the field of [its] technical training, education, and experience." *Reserve Mining,* 256 N.W.2d at 824.

### I.

Generally, we will invalidate an agency rule only if the rule was adopted in excess of the agency's statutory authority. *In re Eigenheer,* 453 N.W.2d 349, 354 (Minn. App.1990) (upholding Department of Natural Resources rule for public waters wetlands). The agency "must be able to draw on its own internal sources of knowledge and experience * * * and [the court] ought not to interfere unless it should clearly exceed its statutory powers." *St. Paul Area Chamber of Commerce v. Minnesota Public Service Comm'n,* 312 Minn. 250, 256, 251 N.W.2d 350, 354 (1977).

Drum argues that the Board did not have jurisdiction to regulate the marsh because the Act does not confer jurisdiction on local soil and water conservation districts to regulate wetlands of ten or more acres in unincorporated areas. Drum asserts that the legislature has delegated this authority solely to the Commissioner of Natural Resources.

In 1991 the Minnesota legislature enacted the Wetland Conservation Act to "achieve no net loss in the quantity, quality, and biological diversity of Minnesota's existing wetlands." Minn.Stat. § 103A.201, subd. 2(b)(1) (1996); *see also* Minn. R. 8420.0100. The Legislature required that "[w]etlands must not be drained or filled, wholly or partially, unless replaced by restoring or creating wetland areas of at least equal public value * * *." Minn.Stat. § 103G.222, subd. 1(a) (1996); *see also* Minn. R. 8420.0105.

The Act is administered through a partnership between the state and "local govern-

ment units"—in this case, the Douglas Soil and Water Conservation District. *See* Minn. Stat. § 103G.005, subd. 10e (1996) (defining "local government unit"). A landowner who believes that a proposed activity will result in no net loss of wetlands may apply for a no-loss determination from the local government unit. Minn.Stat. § 103G.2242, subd. 4 (1996); *see also* Minn. R. 8420.0220. If the wetland must be replaced, then the local government unit must make the determination whether the landowner's replacement plan complies with the Act. Minn.Stat. § 103G.2242, subd. 1(b) (1996); *see also* Minn. R. 8420.0230. Finally, if a landowner believes that an activity is exempt from the replacement requirement, then the landowner may apply for an exemption determination from the local government unit. Minn.Stat. § 103G.2242, subd. 4; *see also* Minn. R. 8420.0210.

The Board is charged with the ultimate responsibility for implementing the Act and hears appeals from local government decisions. Minn.Stat. § 103G.2242, subd. 9 (1996); *see also* Minn. R. 8420.0250. These decisions on the merits of an appeal are subject to judicial review under Minn.Stat. § 14.63–.69 (1996). Finally, the Act provides the Board with the authority, in consultation with the commissioner, to promulgate the rules necessary to implement the Act. Minn. Stat. § 103G.2242, subd. 1(a); *see also* Minn. R. ch. 8420 (chapter of Rules implementing Act).

The Act regulates activities that drain or fill wetlands. Minn.Stat. § 103G.222, subd. 1(a); *see also* Minn. R. 8420.0105. Wetlands are "lands transitional between terrestrial and aquatic systems where the water table is usually at or near the surface or the land is covered by shallow water." Minn.Stat. § 103G.005, subd. 19(a) (1996). But wetlands "does not include public waters wetlands * * *." *Id.,* subd. 19(b) (1996).

The Act provided the Board with authority to promulgate rules to implement the Act. Minn.Stat. § 103G.2242, subd. 1(a). The

Board promulgated a rule defining the term "wetlands": "[w]etlands does not include public waters wetlands and public waters that are designated on the public waters inventory maps * * *." Minn. R. 8420.0112, subpt. 52C. The Board promulgated a rule enunciating the same principle, which states that the chapter implementing the Act "does not apply to the public waters and public waters wetlands as defined in Minnesota Statutes, section 103G.005, subdivision 15 and 18, which have been inventoried by the commissioner of natural resources * * * ." Minn. R. 8420.0105. Although the Board referenced the public waters inventory maps [1] when it defined the term "wetlands," the Act does not make reference to them for this purpose.

Drum objects to the rule defining "wetlands" and argues that the Board exceeded its statutory authority when it promulgated the rule for the purposes of Minn.Stat. §§ 103G.222–103G.2373 to include all wetlands except public waters wetlands and public waters that are inventoried on the public waters inventory maps. Minn. R. 8420.0112. Consequently, Drum argues, the District only has jurisdiction explicitly conferred by the Act to consider no-loss issues, replacement plans, and exemptions for type-four wetlands less than ten acres in size that are in unincorporated areas, while type-four wetlands that are ten or more acres are subject to the jurisdiction of the Department of Natural Resources. Neither statute nor rules regulating wetlands support Drum's assertions.

The Board concluded that the Board's rules (1) are consistent with the legislature's intent to protect all wetlands not protected by the Department of Natural Resources under the public waters inventory maps; and (2) specify that the Act regulates all wetlands except those "designated on the public waters inventory maps." Minn. R. 8420.0110, subpt. 52C.

---

1. In the 1970s the Minnesota State Legislature required the Department of Natural Resources to conduct an inventory of the state's public waters and wetlands subject to the permit authority of the DNR. The public waters and wetlands (now referred to as "public waters wetlands") are des-

ignated on the Department of Natural Resources' public waters inventory maps, which have been filed with the auditor of each county. *See* Minn. Stat. § 103G.201 (1996); *see also In re Christenson,* 417 N.W.2d 607, 609–11 (Minn.1987) (explaining inventory process).

We conclude that the legislature provided the Board with statutory authority to promulgate the rules that regulate wetlands not covered by the public waters inventory map. And those rules are consistent with the legislature's intent. In adopting the Act, the legislature intended to "achieve no net loss in * * * wetlands;" "increase the quantity, quality, and biological diversity of * * * wetlands;" avoid destroying or diminishing "the quantity, quality, and biological diversity of wetlands; and replace wetlands impacted by activity." Minn.Stat. § 103A.201, subd. 2(b)(1)-(4). The legislature also made extensive findings of the value of wetlands including "conserving surface waters, maintaining and improving water quality, [and] preserving wildlife habitat * * * ." *Id.*, subd. 2(b).

In its statement on the need for and reasonableness of the definition of wetlands that now appears in Minn. R. 8428.0110, subpt. 52C, the Board proposed that all wetlands be subject to regulation by either the Department of Natural Resources or the Act—an objective consistent with the legislature's "no net loss" goal:

> WETLANDS, A WETLAND, THE WETLAND, WETLAND AREA. Part a) of the definition comes straight from the Act, Minn.Stat. Section 103G.005, Subd. 19. Part c) does also, but with additions. The rule adds the clarification that public waters as well as public waters wetlands are excluded from the coverage of the Act. The rule also adds that the exclusion is for those public waters and public waters wetlands that were inventoried, so that those not inventoried will be reached by the Wetlands Act. There were some that were missed, and it could not have been legislative intent that these are left in limbo.

In re Proposed Rules Implementing the Wetland Conservation Act of 1991, (Feb. 11, 1993); *see* 17 Minn. Reg. 976, 977 (Nov. 2, 1992) (publishing proposed rules relating to Wetland Conservation pursuant to Minn.Stat. § 14.131 (1996)).

The rule clarifies that the Act covers all wetlands except public waters inventoried on the public waters inventory maps. Leaving some wetlands without regulatory authority would have undermined the legislature's goal of achieving no net loss of wetlands. We conclude that the Board's rules are consistent with the Act and do not exceed the Board's authority. Therefore, the District acted within its statutory authority when it promulgated the rule clarifying that the Act's jurisdiction included wetlands greater than ten acres not inventoried on the public waters inventory maps.

The record demonstrates that Drum's marsh falls within the jurisdiction of the district. The Act provides that wetlands must demonstrate the following three characteristics: (1) a predominance of hydric soils; (2) be saturated by water sufficient to support a prevalence of hydrophytic vegetation; and (3) support a prevalence of such vegetation. Minn.Stat. § 103G.005, 19(a)(1)-(3) (1996). More specifically, type-four wetlands are "inland deep fresh marshes in which soil is usually covered with six inches to three feet or more of water during the growing season." Minn.Stat. § 103G.005, subd. 17b(4) (1996).

The record demonstrates that the slough or pond at issue is a type-four wetland. The Panel conducted a wetland determination at Drum's property on July 31, 1995, and found that hydric soils, wetland hydrology, and hydrophytic vegetation were all present. Furthermore, the parties do not dispute that Drum's marsh is a type-four wetland, that it is not listed on the public waters inventory map for Douglas County, and that it is situated in an unincorporated area. Therefore, we conclude that the District has jurisdiction over Drum's 15–acre marsh even though it is greater than ten acres.

## II.

Generally, the Act requires landowners to provide a replacement plan for any reduction in wetlands. Minn.Stat. § 103G.222, subd. 1. But the Act does provide numerous exceptions, two of which are in dispute here. First, the Act does not require a replacement plan for wetlands "created solely as a result of * * * actions by public or private entities that were taken for a purpose other than creating the wetland." Minn.Stat. § 103G.2241, subd. 5(3) (1996); *see also* Minn. R. 8420.0120, subpt. 10(iii). Second, the Act exempts draining "resulting from

maintenance and repair of existing drainage systems" "except for draining * * * wetlands that have been in existence for more than 25 years * * * ." Minn.Stat. § 103G.2241, subd. 2(d) (1996); *see also* Minn. R. 8420.0120, subpt. 3.

The Board affirmed the District's determination that Drum "did not meet his burden of proof that the wetland was enlarged solely due to the construction of the road in 1972." The Board also determined that the second exemption did not apply to the proposed activity because it did not constitute the repair of an existing private drainage system. Drum argues that the Board's decision was arbitrary and capricious when it determined that he is not entitled to either of these two exceptions provided by statute. We disagree.

■ Regarding the first exemption, Drum argues that aerial photographs demonstrate that the marsh had stabilized until the construction of the road, which was built without culverts, sealed off a drainage ditch, and consequently interfered with the seepage function of the marsh.

The District determined that "[i]ncreased precipitation [was] the biggest factor accounting for the increased size of the [marsh]." The district relied on (1) the Panel's review of precipitation records; (2) soil surveys; (3) the marsh was in a landlocked basin; (4) no surface water had flowed from the marsh via the ditch; (5) the absence of documented road maintenance problems related to water within the drainage ditches; (6) the "What Causes High Water" publication dated July 8, 1996; and (7) a comparison of wetland size determinations of Kastelle and Jerry Haggenmiller, District Coordinator.

The record supports the District's determination denying the exemption. Even though Drum alleges in his brief that the installation of a township road without culverts and sealing off a drainage ditch is "obviously sufficient to raise the water level," the District clearly identified contrary evidence that would support an opposite conclusion—the fact that the road had not been damaged by water and that a long-time resident in the area stated that he had never seen water in the ditch.

Furthermore, record demonstrates that the surface area of the marsh has steadily increased in size from 1958 to 1992. For example, the first year of the aerial—1958— indicates that the surface area of the marsh equaled 6.7 acres, but by 1972, the year the road was installed, the marsh had increased in size to 13.6 acres. In a letter written by Kastelle, he states "it is obvious that the study area slough wetland has been increasing in size, especially since the construction of the road, which services the area." This statement indicates that even Drum's primary witness agrees that the installation of the road is not the "sole" cause of the increase in the marsh's surface area. The District did not determine that the road had no impact on the water level, it merely concluded that Drum had not met his burden of establishing that the wetland enlarged "solely" due to the installation of the road. The road may or not have increased the surface area of the marsh, but no evidence supports the conclusion that it was the "sole" cause of the increase. Given that Drum's own evidence does not clearly contradict the District's conclusion that the township road was not the "sole" cause of the increase in surface area, the District and Board's decision was not in error.

■ Similarly, the evidence is insufficient for us to find that the Board erred when it concluded that the exemption for repair does not apply. Even if the surplus water or the wetland had been in existence for 25 years, the record does not demonstrate that that the proposed activity constitutes any type of maintenance or repair of an existing drainage system, and Drum does not make any such allegation in his brief.

### III.

■ Drum's final argument is that the Act's provision prohibiting a landowner from draining his lands unless the landowner provides replacement acreage constitutes a violation of the takings clause of the Fifth Amendment to the United States Constitution. But because neither the District nor the Board considered the takings issue, there

is no record for this court to review, and we decline to address it. *See In re Application of Central Baptist Theological Seminary,* 370 N.W.2d 642, 649 (Minn.App.1985) (declining to review takings claim when issue had not been previously considered), *review denied* (Minn. Sept. 19, 1985).

## DECISION

The Minnesota Board of Water and Soil Resources did not err when it determined as a matter of law that the Douglas Soil and Water Conservation District has jurisdiction to regulate a 15–acre wetland in an unincorporated area. Similarly, the Board's decision that neither of the exemptions applied was supported by substantial evidence.

**Affirmed.**