Re **BOARD ORDER, KELLS (BWSR),**

v.

**CITY OF ROCHESTER, File 98–5.**

**No. C8–98–2419.**

Court of Appeals of Minnesota.

July 20, 1999.

Thomas A. Larson, Jack Y. Perry, Briggs and Morgan, P.A., Minneapolis (for relator Frank Kottschade for B & F Properties, L.L.C.).

Mike Hatch, Attorney General, David P. Iverson, Assistant Attorney General, St.

Paul (for respondent Minnesota Board of Water and Soil Resources).

Considered and decided by RANDALL, Presiding Judge, DAVIES, Judge, and FOLEY,* Judge.

## OPINION

RANDALL, Judge.

Relator challenges a decision of the Minnesota Board of Water and Soil Resources (BWSR), which reversed the City of Rochester's approval of a wetland replacement plan. Relator asserts that BWSR's decision must be reversed because BWSR did not have jurisdiction to hear the appeal and BWSR erred as a matter of law by reversing the city's approval. In the alternative, relator argues that this case should be remanded because only five of the 17 BSWR members heard the appeal. We affirm.

## FACTS

Relator B & F Properties, L.L.C. (B & F) owns an approximately 21–acre parcel of land in Olmsted County. The property borders U.S. Highway 63 on one side. Running adjacent to Highway 63 is 2.61 acres of wetland. B & F planned to construct a driveway on its property to connect the property to an existing curb cut on Highway 63. On behalf of B & F, Frank Kottschade applied for city approval of a wetland replacement plan. The application stated that the entire 2.61 acres of wetland would be destroyed in creating the driveway.

B & F's application was reviewed by a technical evaluation panel (TEP), composed of a BWSR employee, a technical professional employee of the local soil and water conservation district, and a technical professional appointed by the city. *See* Minn.Stat. § 103G.2242, subd. 2 (1998) (describing composition of TEPs). After the

TEP's review, the TEP sent a letter to B & F's wetland specialist, Jeffrey Broberg, requesting a specific project design. Broberg replied that he believed that a specific project proposal was not needed because the wetland impact was unavoidable if any driveway was created across the wetland. Broberg stated that "it would be futile to spend any time or money" preparing alternative plans or project designs. The TEP then determined that the replacement plan was an incomplete application and recommended that the city council reject B & F's application because

> it contains no site plan, insufficient information to determine if the impact could be avoided or minimized, and contains no analysis of alternatives to show wetland avoidance all of which are required by the rules.

B & F stated in a responsive letter that it was not required to undertake futile efforts and threatened that denial of the plan would be a "regulatory take," which would result in B & F taking legal action against the city.

The city council rejected the TEP's recommendation by a 4–to–3 vote and approved B & F's replacement plan. Mary Kells, a TEP member and BWSR employee, appealed the city's decision to BWSR. After a hearing before BWSR's dispute resolution committee (DRC), the DRC recommended that BWSR reverse the city's decision approving the replacement plan. BWSR adopted the DRC's recommendation and reversed the city. BWSR concluded that the city incorrectly applied the Water Conservation Act (WCA) because it failed to require B & F to provide a detailed project plan. BWSR also concluded that Kells had standing to appeal the city's decision because of her position as a TEP board member and concluded that her failure to submit a $200 filing fee was not a jurisdictional defect. B & F petitioned this court for a writ of certiorari.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

## ISSUES

1. What is the proper standard of review?

2. Did petitioner, who was a BWSR employee and TEP member, have standing to appeal from the city's decision?

3. Did BWSR have subject matter jurisdiction to hear the appeal from the city's decision?

4. Did BWSR err in reversing the city's decision approving relator's wetland replacement plan?

5. Did BWSR err in utilizing a five-member panel to hear an appeal from the LGU's decision?

## ANALYSIS

### I.

 B & F asserts that because BWSR's decision was an appellate decision, this court should review the proceedings before the city and not give deference to BWSR's decision. B & F cites to *Trisko v. City of Waite Park*, 566 N.W.2d 349 (Minn.App.1997), *review denied* (Minn. Sept. 25, 1997), in support of this argument. In *Trisko*, appellant had brought a declaratory judgment action in district court challenging the City of Waite Park's decision denying a request for a conditional-use permit. *Id.* at 351–52. There, this court determined that no special deference should be given to the district court's review of the city's decision. *Id.* at 352.

*Trisko* is inapplicable to this case. Statute governs the applicable standard of review here. Pursuant to Minn.Stat. § 103G.2242, subd. 9 (1998):

[A] decision on the merits of an appeal [to BWSR] must be considered the decision of an agency in a contested case for purposes of a judicial review under sections 14.63 to 14.69.

*See also Drum v. Minnesota Bd. of Water & Soil Resources*, 574 N.W.2d 71, 74 (Minn.App.1998) (stating "[BWSR] decisions on the merits of an appeal are subject to judicial review under Minn.Stat. § 14.63–.69").

 In reviewing an agency decision in a contested-case proceeding, this court determines whether the agency's decision was

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1998). The agency's factual findings must be viewed in the light most favorable to the agency's decision and shall not be reversed if the evidence reasonably sustains them. *White v. Metropolitan Med. Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). An agency decision based on an interpretation of a statute or regulation is a legal question to which the court need not defer. *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). Considerable deference is given, however, to an agency's construction of its own regulations. *Id.* at 40. An agency's construction of an ambiguous regulation should be upheld if it is reasonable, but the court need not defer to an agency's construction of an unambiguous regulation. *Id.*

### II.

 B & F next asserts that Kells did not have standing to appeal the city's decision.[1] Appeal from a decision by a LGU

---

1. Although B & F combines its arguments on standing with its arguments challenging BWSR's jurisdiction to hear this appeal, we address standing separately because standing " 'focuses on the party* seeking to get his com-

plaint before a * * * court and *not on the issues* he wishes to have adjudicated.' " *Sundberg v. Abbott*, 423 N.W.2d 686, 688 (Minn.App.1988) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d

may be made by the wetland owner, anyone who received notice of the decision pursuant to statute, or 100 residents of the county in which a majority of the wetland lies. Minn.Stat. § 103G.2242, subd. 9. Those that must receive notice of the decision include members of the TEP. Minn. Stat. § 103G.2242, subd. 7 (1998).

It is undisputed that Kells was a member of the TEP. Thus, BWSR did not err in concluding that Kells had standing to appeal the LGU's decision.

## III.

■ B & F additionally argues that BWSR did not have jurisdiction[2] to hear Kells's appeal from the city's decision because Kells did not submit the required filing fee and did not state the basis for her appeal in her petition to BWSR.

### A. Filing Fee

A LGU's decision may be appealed by submitting a petition and by paying a $200 filing fee, "which shall be retained by the board to defray administrative costs." Minn.Stat. § 103G.2242, subd. 9.

Caselaw states that courts may not exercise jurisdiction over matters absent timely submission of filing fees. *See Dempsey v. Meighen,* 257 Minn. 576, 579, 102 N.W.2d 825, 827 (1960) (holding submission of appellate court filing fee is jurisdictional requirement); *Heinsch v. Lot 27, Block 1 For's Beach,* 399 N.W.2d 107, 109 (Minn.App.1987) (concluding failure to submit district court filing fee before expiration of time to appeal from county board's action was jurisdictional defect). We need not decide whether a similar rule applies here, however.

■ It is undisputed that Kells appealed on behalf of BWSR and in her capacity as a member of the TEP. *See* Minn.Stat. § 103G.2242, subd. 2 (1998) (stating TEPs are composed of three persons, including technical professional employee of BWSR). Under these circumstances, requiring Kells/BWSR to pay a filing fee would have amounted to BWSR paying the fee to itself. *Cf.* Minn.Stat. § 645.17(1) (1998) (stating legislature does not intend absurd result). Also, as BWSR noted, requiring Kells/BWSR to pay the filing fee would not satisfy the filing fee's purpose, which, according to Minn.Stat. § 103G.2242, subd. 9, is to defray BWSR's administrative costs. *Cf.* Minn.Stat. § 357.08 (1998) (exempting state from submitting required filing fees in appeals "taken solely in the public interest, where the state is the appellant"). Therefore, BWSR did not err by reviewing this case despite the absence of a filing fee.

### B. Basis for Appeal

■ An application for appeal may be denied by BWSR if "the appeal is meritless, trivial, or brought solely for the purposes of delay." Minn.Stat. § 103G.2242, subd. 9. The statute does not indicate what the petition for appeal must contain. The statute states only that "a petition" shall be submitted.

■ Kells's petition consisted of a letter directed to BWSR stating that she was petitioning BWSR to hear an appeal. The letter listed the parties, cited the procedural posture of the case, and noted that the city denied the TEP's recommendation that the city reject B & F's proposal because B & F failed to file a complete application. In light of the statute's lack of specificity regarding the required con-

---

947 (1968)) (alteration in original), *review denied* (Minn. June 29, 1988).

2. B & F does not specify whether it is challenging subject matter or personal jurisdiction. We will assume B & F is making a subject matter jurisdiction argument because B & F disputes BWSR's authority to decide

the issues in Kells's appeal and does not dispute BWSR's jurisdiction over B & F. *See Cochrane v. Tudor Oaks Condominium Project,* 529 N.W.2d 429, 432 (Minn.App.1995) (defining subject matter jurisdiction as authority to hear and decide particular actions and questions), *review denied* (Minn. May 31, 1995).

tents of a petition, this petition was sufficient.

## IV.

To approve a wetland replacement plan pursuant to WCA, the LGU "must ensure that the applicant has exhausted all possibilities to avoid and minimize adverse wetland impacts according to sequencing in part 8420.0520." Minn. R. 8420.0540, subpt. 1 (1997). "Sequencing" requires the applicant to demonstrate that the project complies with five principles in descending order of priority. Minn. R. 8420.0520, subpt. 1 (1997 & Supp. II 1998).

The first sequencing principle requires the applicant to demonstrate whether wetland impact can be avoided. *Id.*, subpt. 1.A (1997). To establish whether the impact can be avoided:

> The applicant shall provide the local government unit with documentation describing at least two alternatives in addition to the proposed project, one of which may be the no-build alternative, that would avoid impacts to wetlands * * *. The alternatives may include consideration of alternate sites or alternative project configurations on the proposed site. The alternatives must be judged by the local government unit as good faith efforts, or the local government unit may require the applicant to redraft them for reconsideration.

*Id.*, subpt. 3.C.(1) (Supp. II 1998). The LGU is required to determine whether any "feasible and prudent alternatives are available that would avoid impacts to wetlands." *Id.*, subpt. 3.C.(2) (1997). If the LGU determines that no "feasible and prudent alternative" exists, the LGU must then consider the other sequencing requirements. *Id.*, subpt. 3.C.(3) (1997).

BWSR determined that B & F did not provide enough information to permit the TEP or the city to determine whether the project complied with the sequencing requirements. BWSR concluded that the city's insistence that the TEP did not dem-onstrate the existence of alternatives to the wetland destruction "misplace[d] the burden [because] it is the applicant's burden to show that feasible alternatives have been appropriately considered." BWSR also rejected B & F's assertion that sequencing could be avoided because the wetland may be destroyed in the future by unrelated road construction.

Contrary to B & F's argument that neither Minnesota Statutes nor Minnesota Rules require detailed plans and specifications of a proposed project, the rules specifically state that in a wetland replacement plan application

> the nature of the proposed project, its areal extent, and the impact on the wetland *must be described in sufficient detail* to allow the local government unit to determine the amount and types of wetland to be impacted and to demonstrate compliance with the replacement sequencing criteria in part 8420.0520, if applicable.

Minn. R. 8420.0530.C.(10) (Supp. II 1998) (emphasis added). Here, B & F simply informed the city that the impact was unavoidable because B & F is planning to build a driveway over the wetland. B & F then explained that even if B & F did not build the driveway, it was likely that the wetland would be destroyed because the Minnesota Department of Transportation is planning to alter Highway 63 in the future.

B & F did not provide two alternatives to the plan as required. *See* Minn. R. 8420.0520, subpt. 3.C.(1) (requiring applicant to provide documentation of two or more alternatives to proposed project to permit determination of whether wetland impact is avoidable). B & F provided one alternative by stating a "no-build" option. *See id.* (permitting no-build alternative). The second alternative B & F listed, however, is not an alternative to the proposed driveway. Instead, it is a statement that the state will be altering Highway 63 in

the next few years, thereby likely destroying the wetland.

Because B & F's application does not provide sufficient detail to permit a determination of whether wetland impact can be avoided, B & F has not complied with the rule requiring an applicant to demonstrate compliance with the sequencing criteria. Thus, BWSR did not err in concluding that the city did not correctly apply WCA, and BWSR did not err in reversing the city's decision.

 B & F claims that even if B & F is required to provide any additional information in its application, doing so would have been futile in this case. The futility doctrine has been recognized where the court has determined that although a party failed to exhaust administrative remedies before seeking judicial review, it would have been futile to pursue such remedies, and, therefore, the party did not need to not pursue them. *See McShane v. City of Faribault*, 292 N.W.2d 253, 256 (Minn.1980) ("We have consistently held that administrative remedies need not be pursued if it would be futile to do so." (citation omitted)). This doctrine does not, however, permit a party to rely on its personal belief that it would not have been successful if it had followed the procedures. *See Davis v. Boise Cascade Corp.*, 288 N.W.2d 680, 683 (Minn.1979) (holding plaintiff's decision not to pursue matter according to collective bargaining agreement because he believed he would be unsuccessful was not excuse for failure to follow agreement).

Although BWSR's decision may be viewed as hypertechnical, the purpose of the sequencing requirements is to determine whether impact is unavoidable and to minimize any impact. *See* Minn. R. 8420.0540, subpt. 1 (stating LGU "must ensure that the applicant has exhausted all possibilities to avoid and minimize adverse wetland impacts according to sequencing in part 8420.0520"). Here, B & F unilaterally determined that impact was unavoidable and then simply informed the city of

that conclusion. As BWSR notes on appeal, the city took at face value B & F's expert's opinion that nothing could be done to prevent the complete destruction of the wetland. Without complete information on the proposed driveway and a description of two alternatives as required by the rules, the city erred by determining that the impact was unavoidable.

## V.

 B & F makes an alternative argument that this case should be remanded because only five of the 17 BWSR members heard the oral argument or read the briefs in the appeal to BWSR.

 Minn.Stat. § 103B.101, subd. 10 (1998), establishes a dispute resolution committee (DRC) of BWSR to hear appeals. The DRC is comprised of five BWSR members. *Id.* Minn.Stat. § 103G.2242, subd. 9, states that appeals from decisions on wetland replacement plans "must be heard by the [DRC]." Thus, because BWSR followed the specific statutory requirements for reviewing the city's decision, B & F's request for a remand on this issue is denied.

## DECISION

Kells had standing to appeal from the city's decision on behalf of BWSR and in her capacity as a TEP member. BWSR also had subject matter jurisdiction to hear the appeal from the city's decision. Kells's failure to submit a filing fee was not a jurisdictional bar, and Kells's petition was sufficient.

B & F's wetland replacement plan did not demonstrate compliance with WCA sequencing requirements. The plan did not provide a second alternative to building a driveway across the wetland and was void of a description of the proposed driveway. Therefore, BWSR did not err in concluding the city did not correctly apply WCA when the city approved the plan.

We conclude that BWSR did not err by utilizing a five-member committee to review the city's decision.

**Affirmed.**